STATE OF NORTH CAROLINA v. JAMES THOMAS MOORE

No. 253A85

(Filed 2 April 1986)

**1. Searches and Seizures § 16— consent to search by defendant's mother**

The evidence supported the trial court's finding that defendant's mother consented to a warrantless search of defendant's bedroom in a residence which she owned even though the printed name on the consent to search form incorrectly stated the first name of defendant's mother and the officer was mistaken as to the first name of defendant's mother.

**2. Kidnapping § 1— indictment insufficient to charge first degree kidnapping**

An indictment was insufficient to charge first degree kidnapping where it alleged that the kidnapping was committed to facilitate the commission of a first degree sexual offense but failed to allege that the victim was sexually assaulted, seriously injured, or not released in a safe place. However, the indictment was sufficient to charge second degree kidnapping. N.C.G.S. § 14-39(a) and (b).

APPEAL as of right pursuant to N.C.G.S. § 7A-27(a) from judgments entered by *Tillery, J.,* at the 28 January 1985 Criminal Session of Superior Court, PITT County. We granted defendant's motion to bypass the Court of Appeals on the charge of first degree kidnapping on 22 July 1985.

Defendant was charged in indictments with first degree sexual offense and first degree kidnapping.

At trial, the State's evidence tended to show that at approximately 5:00 p.m. on 19 August 1984 James Earl Middleton, a fif-

teen-year-old high school student, and his mother went to play bingo on 10th Street in Greenville, North Carolina. After winning forty dollars, Middleton told his mother he was going to the movies and left the bingo parlor around 6:30 p.m. He walked to the theater and sat through the feature film twice. Around 11:00 p.m. when the movie ended, Middleton decided to walk to a friend's house. Finding no one at home, he started back towards the bingo parlor to walk his mother home.

Middleton testified that he walked several blocks and as he prepared to cross the street to the bingo parlor he noticed a black man in a brown station wagon signalling to him to come over to his car. Middleton obeyed, thinking that the driver needed directions. The driver opened his car door, grabbed Middleton by the shirt and arm, and threw him across the steering wheel to the passenger's side of the car. Middleton tried unsuccessfully to escape through the passenger door. The driver, identified by Middleton as the defendant, repeatedly struck him in the arm and chest with his fist to stop Middleton's attempts to flee.

After driving several miles with Middleton as his captive, the defendant stopped behind an abandoned house. He then brandished a "wierd [sic] looking knife" and ordered Middleton to take off his pants and get in the back seat. Middleton described the knife as having a two-inch blade that curved upwards. Middleton testified that he removed his pants and underclothing and climbed into the back part of the station wagon. Defendant also climbed over the back seat and laid directly on top of Middleton who was lying in a prone position. While holding Middleton by the throat with one hand, defendant shoved his penis into Middleton's rectum. At that point, Middleton began struggling very hard and managed to throw defendant off of him. He jumped over the seat, unlocked the door, and ran to the street. Middleton continued to run, clad only in his shirt and shoes, until he flagged down Police Officer Jerry Lee who took him to a hospital. Nurse Linda Ludlow testified that she examined Middleton and found a large amount of blood on the sheet wrapped around him and tears inside his rectum.

Middleton recounted the story to Deputy Sheriff Larry Parker who located at 101 Midgette Lane a car fitting the description given by Middleton. On the following day, 20 August 1984, Parker

drove to the house where the station wagon was spotted. Parker had already determined that Velma Moore and her son, the defendant, lived in the house. Finding no one at home, Parker left and returned with Middleton to identify the vehicle. Parker testified that Middleton immediately recognized the car as the vehicle used in his assault. As they stood beside the car, defendant walked out of the house. Middleton quickly identified defendant as his attacker. Defendant was placed under arrest and advised of his constitutional rights. As the three men drove back to the police station, defendant, reaching from the back seat, slapped Middleton hard across the face and exclaimed: "[W]hy did you tell on me, sissy." Parker further testified that he later returned to the Moore home, obtained Mrs. Moore's consent to search her home, and found in defendant's bedroom the knife, later identified as the one used by defendant to threaten Middleton.

Defendant testified in his own defense and stated that he had previously seen Middleton outside the Paddock Club, a gay bar in Greenville, where they had engaged in fellatio. Defendant further admitted seeing Middleton on the night of 19 August 1984. According to defendant, Middleton entered his car voluntarily and first suggested that they engage in oral sex that evening. He later suggested that they have anal intercourse. However, during this latter act, defendant realized that Middleton had just been with someone else. This fact angered defendant because he was afraid he would contract a venereal disease. At that point, Middleton jumped out of the car, leaving his pants, and ran to the road.

Deputy Sheriff Parker was also called by the defense. He testified that on 20 August 1984 defendant gave a statement which indicated that he did engage in consensual sexual relations with Middleton. Defendant told Parker that he felt Middleton reported the incident to the police to "set [him] up."

The jury returned a verdict of guilty of first degree sexual offense and first degree kidnapping. Defendant received the mandatory life sentence for the sexual assault and a consecutive twelve-year sentence for kidnapping.

*Lacy H. Thornburg, Attorney General, by Gayl M. Manthei, Associate Attorney, for the State.*

*Malcolm Ray Hunter, Jr., Acting Appellate Defender, by Gordon Widenhouse, Assistant Appellate Defender, for defendant-appellant.*

BRANCH, Chief Justice.

[1]  By his first assignment of error, defendant contends that the trial court improperly admitted into evidence the knife seized from his bedroom pursuant to an allegedly invalid third party consent search. At trial, defendant contested the identity and therefore the authority of the woman who allowed the search. He argues on appeal that the trial court's findings of fact that his mother consented to the search are not supported by competent evidence.

On direct examination prior to the *voir dire* hearing conducted to determine the admissibility of the knife, Deputy Sheriff Larry Parker testified that after defendant's arrest he went back to 101 Midgette Lane and obtained consent to search the residence from "the defendant's mother" who stated that she "lived in the house and was in charge of the house." During the *voir dire* hearing, Parker stated that Mrs. Velma Moore who identified herself as the defendant's mother signed the consent and waiver to search without a search warrant form giving him the authority "to conduct a complete search of my residence located at 101 Middgette [sic] Lane." According to Parker, Mrs. Moore stated that it was her residence and that she paid for all household expenses.

Defendant cross-examined Parker, but indicated that he had no *voir dire* evidence of his own to offer. The trial court then made these findings of fact:

> [T]he Court having heard the testimony of the officer, Officer Parker, finds as a fact that on the 22nd of August, 1984 Mr. Parker in company with another officer visited the address from which the defendant had been arrested and interviewed the defendant's mother whose name is Velma Moore and received from her permission to search without a search warrant any portion of the home in which she and the defendant resided. [Defendant's Exception No. 3.] The Court further

finds as a fact that she indicated to him that this was her residence and that the defendant was not a paying boarder.

At that point in the trial court's fact finding, defendant indicated that he did after all have some evidence to offer on *voir dire*. The trial court interrupted its findings of fact and allowed defendant to take the stand.

In his *voir dire* testimony, defendant stated that he resided with his mother at 101 Midgette Lane. He further revealed, however, that "Velma Moore" is the name of his sister who lives in Farmville, North Carolina. According to defendant, his mother's name is "Verna," not "Velma."

At the conclusion of defendant's testimony, the trial judge resumed his fact finding:

Let the record show that State's Voir Dire Exhibit #1 in the printed portion thereof contains the name of Mrs. Velma Moore. V-E-L-M-A. And following the testimony of Mr. James T. Moore, the Court examined the signature which appears on the consent and waiver form and finds as a fact that the name that is signed thereto is Verna, V-E-R-N-A, or V-E-R-N-O, and what appears to me to be a "G" Moore. Anyway, continuing with the Court's findings of fact, the Court finds that the person who identified herself to the officer did indicate her possession of the premises and did permit him to come in and search and did escort him to the room which she pointed out as being the room in which the defendant slept. And the Court further finds as a fact that Exhibits 2 and 3 [the knife and its leather holster] were therein found. Upon the foregoing findings of fact the Court concludes as a matter of law that Officer Parker on the 22nd day of August, 1984 did receive permission to search the premises from the person in possession thereof on that occasion, and for that reason there was no requirement that a search warrant be issued or used. [Defendant's Exception #4.] The Court denies the motion to suppress the fruits of the search and overrules the objection which has been made thereto and declines to strike the evidence or to give any cautionary instructions to the jury. [Defendant's Exception #5.] To all of these findings of fact and conclusions of law and rulings the defendant through counsel objects and excepts.

Defendant contends that in order to establish the validity of the consent search the State should have been required to call his mother as a witness. We reject the notion that the State was required to call any particular person to establish the validity of the search and seizure. Rather, the evidence seized during the consent search was properly admitted if the trial court's findings of fact are supported by competent evidence. *State v. Thompson*, 287 N.C. 303, 214 S.E. 2d 742 (1975), *death penalty vacated*, 428 U.S. 908, 49 L.Ed. 2d 1213 (1976). Those findings, so supported, are binding on this Court, even though there is evidence to the contrary. *State v. Davis*, 290 N.C. 511, 227 S.E. 2d 97 (1976). In determining whether the trial court's findings are supported by the evidence, we look to the entire record, not merely to the evidence presented on *voir dire*. *State v. Silver*, 286 N.C. 709, 213 S.E. 2d 247 (1975).

We admit that the trial court's findings of fact appear inconsistent. On one hand, the trial court finds that defendant's mother's name was "Velma," but later finds that the consent form was signed by "Verna." Yet, it is obvious from the transcript that once defendant offered his evidence highlighting the fact that his mother's name was "Verna," the trial court, realizing the error in Officer Parker's testimony, corrected the mistake in the findings and clarified that "Verna" had in fact signed the consent/waiver form. This finding was supported by competent evidence.

Furthermore, the evidence presented by defendant himself reveals that he lived at 101 Midgette Lane with his mother, Verna Moore. Through Officer Parker's testimony during direct examination prior to and on *voir dire*, the State established that Parker was permitted to search 101 Midgette Lane by Verna Moore, defendant's mother.

Finally, the Constitution and related laws only protect an accused from *unreasonable* searches and seizures. The reasonableness of the search is determined under the circumstances as they appeared to the officers. *See* Price, North Carolina Criminal Trial Practice, § 4-26 (2d ed. 1985). N.C.G.S. § 15A-222(3) provides that the consent needed to justify a search and seizure may be given "[b]y a person who by ownership or otherwise is reasonably apparently entitled to give or withhold consent to a search of [the] premises." The evidence offered by the State clearly shows that

the officers conducted the search based on the consent of someone who reasonably appeared entitled to give it under the circumstances. "When judged in accordance with 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act,' *Brinegar v. United States*, 338 U.S. 160, 175, 93 L.Ed. 1879, 1890, 69 S.Ct. 1302 (1949)," the search was reasonable and valid under the Fourth Amendment. *Hill v. California*, 401 U.S. 797, 804-05, 28 L.Ed. 2d 484, 490 (1971). Therefore, even in light of the initial mistake concerning the defendant's mother's name, there was sufficient competent evidence and findings consistent therewith made to support the trial court's conclusion that Parker received proper consent from Mrs. Moore to search her son's bedroom and for that reason the issuance and presentation of a search warrant was unnecessary.

As previously noted, defendant did not contest the search and seizure on any ground other than the identity of the woman permitting the search. He did not assert, as he does now on appeal, that a parent has no authority to consent to the search of her emancipated, twenty-nine year old son's private bedroom. Defendant also did not object to the search on the basis that he and his mother were involved in a landlord-tenant relationship. On the contrary, there was uncontradicted and unobjected to evidence presented that defendant was not a paying boarder. Because defendant did not advance these theories at trial, he cannot assert them for the first time on appeal. *State v. Hunter*, 305 N.C. 106, 112, 286 S.E. 2d 535, 539 (1982).

We therefore hold that the trial court properly admitted into evidence the knife seized from defendant's bedroom.

[2] Defendant next contends that his kidnapping conviction must be vacated because the indictment failed to allege all of the essential elements of first degree kidnapping. Specifically, defendant argues that the indictment is fatally flawed because it fails to allege that the victim "either was not released by the defendant in a safe place or had been seriously injured or sexually assaulted." N.C.G.S. § 14-39(b) (1981).

The kidnapping indictment in this case reads as follows:

The jurors for the State upon their oath present that on or about the date of offense shown and in the county named above the defendant named above unlawfully, willfully and feloniously did kidnap James Earl Middleton, a person under the age of sixteen years, by unlawfully confining and restraining and removing him from one place to another, without the consent of his parent or legal guardian, and for the purpose of holding him for facilitating the commission of a felony, to wit: first degree sexual offense.

The kidnapping statute, N.C.G.S. § 14-39, provides in pertinent part:

(a) Any person who shall unlawfully confine, restrain, or remove from one place to another, any other person 16 years of age or over without the consent of such person, or any other person under the age of 16 years without the consent of a parent or legal custodian of such person, shall be guilty of kidnapping if such confinement, restraint or removal is for the purpose of:

(1) Holding such other person for ransom or as a hostage or using such other person as a shield; or

(2) Facilitating the commission of any felony or facilitating the flight of any person following the commission of a felony; or

(3) Doing serious bodily harm to or terrorizing the person so confined, restrain[ed] or removed or any other person.

(4) Holding such other person in involuntary servitude in violation of G.S. 14-43.2.

(b) There shall be two degrees of kidnapping as defined by subsection (a). If the person kidnapped either was not released by the defendant in a safe place or had been seriously injured or sexually assaulted, the offense is kidnapping in the first degree and is punishable as a Class D felony. If the person kidnapped was released in a safe place by the defendant and had not been seriously injured or sexually assaulted, the offense is kidnapping in the second degree and is punishable as a Class E felony.

In *State v. Jerrett,* 309 N.C. 239, 259, 307 S.E. 2d 339, 350 (1983), this Court reiterated the established rule that "an indictment will not support a conviction for a crime unless all the elements of the crime are accurately and clearly alleged in the indictment." We reasoned that this general rule governed the sufficiency of a kidnapping indictment because the legislature had not established or authorized a short-form indictment for kidnapping. Because the language of N.C.G.S. § 14-39(b) states essential elements of first degree kidnapping, the State, in order to properly indict a defendant for first degree kidnapping must allege the applicable elements of both subsection (a) and subsection (b). *Id.* at 261, 307 S.E. 2d at 351.

Obviously, the indictment alleges the applicable element of subsection (a) that the kidnapping was committed for the purpose of facilitating the commission of a felony. It also alleges the felony, first degree sexual offense, that the kidnapping was committed to facilitate. Yet, even though the jury returned a guilty verdict for first degree kidnapping on the grounds that the victim was not released in a safe place and was sexually assaulted, the kidnapping indictment, itself, does not specifically allege any of the elements contained in subsection (b). This omission raises the question of whether the mere reference to the first degree sexual offense is sufficient as an allegation of the element that the victim was sexually assaulted.

We answer this question in the negative and hold that this indictment does not clearly allege all of the constituent elements of first degree kidnapping. Because the indictment does not allege in particular that the victim was sexually assaulted, seriously injured, or not released in a safe place, it is insufficient to charge kidnapping in the first degree. It is, however, a valid second degree kidnapping indictment. Since all of the elements of second degree kidnapping were found beyond a reasonable doubt by the jury by virtue of its guilty verdict of first degree kidnapping, defendant under this indictment stands convicted of second degree kidnapping. Because the indictment never charged defendant with first degree kidnapping, that offense was erroneously submitted to the jury as a possible verdict. Unlike the fatal variance between the State's proof and the averments contained in the indictment with regard to first degree kidnapping, there is no such variance between the State's allegations in the indictment of sec-

ond degree kidnapping and its proof at trial. The fact that the State proved first degree kidnapping in the opinion of the jury is immaterial. It is well settled that the indictment controls the prosecution, and evidence not supported by the indictment is unavailing. *State v. Jones*, 227 N.C. 94, 40 S.E. 2d 700 (1946). *See also State v. Joyner*, 301 N.C. 18, 2G9 S.E. 2d 125 (1980). We therefore hold that judgment for first degree kidnapping must be arrested and remand for resentencing on second degree kidnapping.

In conclusion, we find no error in defendant's conviction of first degree sexual offense. Judgment is arrested on first degree kidnapping. This case is remanded to the Superior Court of Pitt County for entry of judgment and sentencing for second degree kidnapping.

No. 84CRS15140—first degree sexual offense—No error.

No. 84CRS15141—first degree kidnapping—Judgment arrested and remanded for sentencing on second degree kidnapping.