STATE OF NORTH CAROLINA v. BRUCE JEROME HOLMES

No. COA00-117

(Filed 3 April 2001)

**1. Drugs— trafficking by possession or transportation of 28 or more grams—sufficiency of evidence—average weight of sample bags**

The trial court did not err by denying defendant's motion to dismiss for insufficient evidence charges of trafficking by possessing or transporting 28 or more grams of heroin where an SBI forensic chemist testified that he examined each of the 671 bags containing an off-white or tan substance seized from defendant, randomly selected and weighed 50 bags, and calculated the total

weight of 31 grams by determining the average weight and multiplying by 671.

**2. Drugs— trafficking by possession or transportation of 28 or more grams—average weight of sample bags—instruction on lesser included offense denied**

The trial court did not err in a prosecution for trafficking by possession or transportation of 28 or more grams of heroin by denying defendant's request for an instruction on the lesser-included offense of trafficking by possession or transportation of 14 or more grams but less than 28 where an SBI forensic chemist testified that he examined each of the 671 bags containing an off-white or tan substance seized from defendant, randomly selected and weighed 50 bags, and calculated the total weight of 31 grams by determining the average weight and multiplying by 671.

**3. Search and Seizure— probable cause—informants' tips**

The trial court did not err in a narcotics prosecution by denying defendant's motion to suppress evidence seized in a search based upon information from informants where the court found that the tips included a physical description of the perpetrators and their vehicle as well as the time and place the sale of the heroin was to occur; the informants had been reliable, providing information leading to multiple arrests and convictions; the informants had first-hand knowledge of the illegal drug activities involved in this case; and the reliability of the tips was established by police observations leading up to the arrest.

Appeal by defendant from judgment entered 6 August 1999 by Judge Larry G. Ford in Guilford County Superior Court. Heard in the Court of Appeals 12 January 2001.

*Attorney General Michael F. Easley, by Associate Attorney General Jeffrey C. Sugg, for the State.*

*W. David Lloyd for defendant-appellant.*

WALKER, Judge.

On 6 August 1999, defendant was convicted of one count of possession with intent to sell or deliver heroin, one count of trafficking in heroin by possession of 28 grams or more, and one count of trafficking in heroin by transportation of 28 grams or more. The State's evidence tended to show the following: On or about 5 January 1999,

Officer Richard Koonce (Koonce) of the Greensboro Police Department and Officer Herbert Sampson (Sampson) of the High Point Police Department each received information from two different informants, Travis London (London) and Antoine Leake (Leake). The informants reported the following: (1) two men known as "Black" and "Blue" would be delivering for sale to London and Leake a large quantity of heroin that evening at 6:00 p.m. at an International House of Pancakes (IHOP) restaurant in Greensboro, North Carolina; (2) "Black," otherwise known as Anthony Barnett (Barnett), is a black male, 30 years of age, approximately 6 feet tall and weighing 195 pounds; (3) "Blue," otherwise known as Bruce Holmes (defendant), is a black male, thirty years of age, approximately 6 feet tall and weighing 175 pounds; (4) Barnett and defendant would be traveling in a tan minivan (van) with Virginia license plates; (5) in the past several weeks, London and Leake had purchased heroin from Barnett and defendant several times at the IHOP.

After receiving this information, Koonce and Sampson involved several other police officers in an arrest plan which included setting up video surveillance at the IHOP that evening. It was agreed that London and Leake would assist the officers by pretending to buy the heroin from Barnett and defendant and then attempt to flee the scene once the police intervened. Leake was equipped with a body wire so Koonce could monitor the transaction. Once London and Leake saw the heroin, they were to give a prearranged signal to police by stating "[t]he shit looks good." London and Leake were to additionally use the word "paper" when the discussion of payment for the heroin took place, which among drug dealers is slang for "money." Once these signals were given, police planned to move in on the transaction.

Later that day, London and Leake received a telephone call from defendant and Barnett to confirm the meeting time and location for the sale of the heroin. Around 6:00 p.m., the police observed as defendant and Barnett arrived in the previously described van which was later determined to be registered in defendant's name. Defendant and Barnett stepped out of the van, entered the IHOP for a few moments while appearing to search for someone and returned to the van. London and Leake then arrived, left their parked Isuzu Trooper (Trooper) and entered the van for a few moments. Next, Leake and Barnett exited the van and reentered the Trooper. London then left the van and started to approach the Trooper. About this time, Koonce thought he had heard the prearranged signal, but was not certain due to noise interference in the wire transmission between him and

Leake. After hearing some discussion among the parties about money, Koonce believed a transaction was occurring between them and alerted the other officers to intervene. London, Leake and Barnett started to flee but were detained by the police. Defendant remained in the van and was also detained by the police.

Koonce informed defendant and Barnett he was going to search the minivan. The search revealed a black plastic bag in the console area between the two front seats. When Koonce opened the bag, he found 671 smaller bags containing what was later identified as heroin by Thomas McSwain (McSwain), a forensic drug chemist with the State Bureau of Investigation (SBI). McSwain testified as an expert witness in the field of forensic drug chemistry and the identification of controlled substances. The trial court consolidated for trial defendant's charges with those of co-defendant Barnett.

**[1]** We first address defendant's contention that the trial court erred in denying his motion to dismiss because there was insufficient evidence that 28 or more grams of heroin were seized from him. Defendant contends the State presented only circumstantial evidence through the testimony of McSwain to establish the quantity of heroin seized since he did not weigh each of the 671 bags. McSwain testified he examined each of the 671 bags which contained an off-white or tan substance. He randomly selected 50 bags which was a larger number than the usual sample size. He then weighed the 50 bags to assure himself the average weight was within an acceptable range. He determined the average weight of the 50 bags to be .0462 grams per bag, with only a "slight variance" in the weight of the individual bags. He then calculated the total weight of the heroin to be 31 grams by multiplying .0462 by 671. McSwain admitted he did not conduct a further statistical analysis as a foundation for his opinion of the total weight of heroin.

To survive a motion to dismiss, there must be "substantial evidence (1) of each essential element of the offense charged and (2) that defendant is the perpetrator of the offense. The reviewing court must consider all the evidence taken in the light most favorable to the State to determine whether there is substantial evidence of that crime charged and that defendant committed the crime. Substantial evidence consists of 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' The test for sufficiency of the evidence is the same regardless of whether the evidence is circumstantial or direct." *State v. Harding*, 110 N.C. App. 155, 162, 429 S.E.2d 416, 421 (1993) (citations omitted).

Here, we need only address whether there is substantial evidence defendant committed each element of the charge of trafficking in heroin, which occurs when one "sells, manufactures, delivers, transports, or possesses" a quantity of "28 grams or more." N.C. Gen. Stat. § 90-95(h)(4) (1999).

This case is similar to *State v. Myers*, 61 N.C. App. 554, 301 S.E.2d 401 (1983), *cert. denied*, 311 N.C. 767, 321 S.E.2d 153 (1984) and *State v. Hayes*, 291 N.C. 293, 230 S.E.2d 146 (1976), where in each case a defendant challenged the content and weight of a controlled substance on the basis that only random samples of the controlled substances were tested and weighed. In *Hayes*, an expert in the field of chemical and microscopic analysis and controlled substances testified he visually examined the remaining two of three envelopes which defendant gave to the police. *Hayes*, 291 N.C. at 301, 230 S.E.2d at 151. The expert tested the contents of only one of the three envelopes which proved to contain marijuana. *Id.* He then determined the contents of the three envelopes contained marijuana by visual inspection. *Id.* The expert likewise randomly selected for testing only four of sixteen envelopes seized from defendant's home which also proved to contain marijuana. *Id.* He visually inspected the remaining twelve of the sixteen envelopes and determined each contained marijuana. *Id.* He then weighed all nineteen envelopes containing marijuana and determined the total weight to be 56.4 grams. *Id.* In holding there was sufficient evidence to go to the jury on the question of whether all of the envelopes contained marijuana, our Supreme Court noted the expert witness had examined and identified marijuana in numerous prior cases. *Id.* at 302, 230 S.E.2d at 151-52. He had visually examined the contents of all the envelopes, which contents appeared to all contain marijuana. *Id.*

Likewise in *Myers*, defendant was convicted of felonious trafficking by selling or delivering 10,000 or more units (tablets) of a controlled substance, methaqualone. *Myers*, 61 N.C. App. at 555, 301 S.E.2d at 402. The State computed the total number of methaqualone tablets based upon the weight of the two bags, rather than actually counting all of the tablets. *Id.* On the basis of this calculation, a determination was made that 30,241 tablets of methaqualone had been seized as evidence. *Id.* Of this total, only 20 tablets were randomly tested and after chemical analysis, were found to contain methaqualone. *Id.* The expert testified he examined all of the tablets to make sure they had the same physical characteristics. *Id.* at 556, 301 S.E.2d at 402. Defendant contended because this evidence pre-

sented a question as to the actual quantity of tablets containing methaqualone, his request for a jury instruction on a lesser-included offense of trafficking less than 10,000 tablets of the controlled substance should have been granted. *Id.* at 555, 301 S.E.2d at 402. This Court disagreed, holding "[a]ll of the evidence tended to show that defendant committed the offense of trafficking in 10,000 or more dosage units of methaqualone and there was no evidence of a lesser-included offense." *Id.* at 556, 301 S.E.2d at 403.

In the instant case, all of the evidence presented by the State tended to show the 671 bags seized from defendant contained heroin. Upon visual examination, McSwain observed the 671 bags, which were taken from the same black plastic bag, were packaged alike and, in his opinion, the 50 bags he sampled had only a "slight variance" in weight. Further, McSwain had 29 years of training and experience in forensic drug chemistry and in the identification of controlled substances with the SBI. He had testified as an expert in this field over five hundred times. *See Harding*, 110 N.C. App. at 163, 429 S.E.2d at 422 (holding "an expert chemist may give his opinion as to the whole when only part of the whole has been tested" where the State's expert's testimony was admissible as to the composition of 165 packets allegedly containing heroin, even though a comprehensive chemical analysis was randomly performed on only a small portion of the packets which the expert determined to contain the same material as all of the packets). Because the State presented sufficient evidence that 28 or more grams of heroin was seized from defendant, this assignment of error is overruled.

[2] Next, defendant argues the trial court erred in denying his request for a jury instruction on the lesser-included offense of trafficking in heroin by transporting or possessing 14 grams or more, but less than 28 grams of heroin. Defendant contends that based on McSwain's testimony, the jury could find he possessed less than 28 grams of heroin.

It is well settled "a jury instruction of a lesser included offense is required 'if the evidence would permit the jury rationally to find defendant guilty of the lesser offense and acquit him of the greater.' " *State v. Brooks*, 136 N.C. App. 124, 131, 523 S.E.2d 704, 709 (1999), *cert. denied*, 351 N.C. 475, 543 S.E.2d 496 (Supreme Court No. 48P00 filed April 6, 2000), *quoting State v. Gary*, 348 N.C. 510, 524, 501 S.E.2d 57, 67 (1998). "Conversely, when all the evidence tends to show that defendant committed the crime charged in the bill of indictment and there is no evidence of the lesser-included offense,

the court should refuse to charge on the lesser-included offense." *State v. Summitt*, 301 N.C. 591, 596, 273 S.E.2d 425, 247, *cert. denied*, 451 U.S. 970, 68 L. Ed. 2d 349 (1981).

Based on our upholding the trial court's denial of defendant's motion to dismiss, we likewise conclude there was sufficient evidence to support the charge of trafficking in heroin by transporting or possessing 28 grams or more and there was insufficient evidence to support an instruction on the lesser-included offense.

**[3]** In his third assignment of error, defendant contends the trial court erred in denying his motion to suppress all evidence seized and statements made by him since there was no probable cause to support the search, as it was based upon information from unreliable informants.

When reviewing a denial of a motion to suppress, this Court's review is "limited to determining whether the trial court's findings of fact are supported by competent evidence, whether the findings of fact support the conclusions of law, and whether the conclusions of law are legally correct." *State v. Trapp*, 110 N.C. App. 584, 587, 430 S.E.2d 484, 486 (1993).

Defendant cites *Alabama v. White*, 496 U.S. 325, 110 L. Ed. 2d 301 (1990), in support of his contention that informants London and Leake are unreliable. *Id.*, 496 U.S. 325, 110 L. Ed. 2d 301 (holding that an anonymous tip on its own seldom demonstrates the informant's basis of knowledge or veracity, so as to justify an investigatory stop). However, that case dealt with an anonymous informant and is not dispositive. Here, the trial court found the informants London and Leake were known by name to Koonce and Sampson and had previously provided reliable information which had been used in the past to make arrests for drug violations. There is no evidence in the transcript to indicate that these informants had ever provided unreliable information to either of the detectives handling the case.

In *State v. Isleib*, 319 N.C. 634, 356 S.E.2d 573 (1987), a deputy sheriff had received information from an informant on three prior occasions and on each of these occasions such information had yielded arrests and convictions in drug cases. *Id.* at 635, 356 S.E.2d 574-75. Our Supreme Court held the deputy sheriff had sufficient information in that case to constitute probable cause to conduct a warrantless search of a vehicle after receiving the informant's tip. *Id.* at 638, 356 S.E.2d at 576.

STATE v. HOLMES

[142 N.C. App. 614 (2001)]

Based upon an informant's information, this Court recently articulated in *State v. Earhart*, 134 N.C. App. 130, 516 S.E.2d 883 (1999), the standard for searching a vehicle without a warrant, otherwise known as the automobile exception:

> A search of a vehicle on a public roadway or public vehicular area is properly conducted without a warrant as long as probable cause exists for the search. Probable cause exists where 'the facts and circumstances within their [the officers'] knowledge and of which they had reasonable trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that 'an offense has been or is being committed. In utilizing an informant's tip, probable cause is determined using a 'totality-of-the circumstances' analysis which 'permits a balanced assessment of the relative weights of all the various indicia of reliability (and unreliability) attending an informant's tip.'

*Earhart*, 134 N.C. App. at 133, 516 S.E.2d at 886 (citations omitted). This analysis includes but is not limited to "the informant's 'basis of knowledge' for his tip and the 'veracity' or 'reliability' of the tip[,]" which may be established by independent police corroboration. *Id.* at 134, 516 S.E.2d at 886.

In ruling on defendant's motion to suppress, the trial court found that London and Leake's tips included a physical description of the perpetrators and their vehicle, as well as the time and place the sale of heroin was to occur. The trial court further found they had been previously reliable sources of information to Koonce and Sampson, leading to multiple arrests and convictions. In addition, London and Leake had first-hand knowledge of the illegal drug activities of defendant and Barnett, as they had purchased heroin from them at the IHOP location several times in the weeks leading up to this incident. Moreover, the reliability of the tip was established by independent police corroboration, as revealed by what the police heard and observed leading up to the arrest of defendant and Barnett. These facts and circumstances sufficiently established an indicia of reliability of these informants to provide the police officers with probable cause to support the search and seizure of the bag containing heroin in defendant's van. The trial court thus properly denied defendant's motion to suppress.

In summary, defendant received a fair trial, free of prejudicial error.

No error.

Judges HUNTER and CAMPBELL concur.