STATE OF NORTH CAROLINA v. LLYOD GREEN, JR. A/K/A LLOYD GREEN, JR.

No. COA08-144

(Filed 6 January 2009)

**Searches and Seizures— car stopped and searched—informant's tip—probable cause**

The trial court did not err by denying defendant's motion to suppress heroin seized from his car pursuant to a tip where defendant contended that the reliability of the informant was not sufficiently established to support the trial court's finding of probable cause to stop and search defendant's vehicle.

Judge JACKSON dissenting.

Appeal by defendant from judgments entered 4 June 2007 by Judge Jay D. Hockenbury in New Hanover County Superior Court. Heard in the Court of Appeals 20 August 2008.

*Attorney General Roy A. Cooper, III, by Assistant Attorney General Joseph Finarelli, for the State.*

*Gilda G. Rodriquez for defendant-appellant.*

BRYANT, Judge.

Defendant's sole argument on appeal is that the trial court erred in denying his motion to suppress evidence based upon his contention that the stop and search was illegal. For the reasons stated herein, we affirm the ruling of the trial court.

On 1 February 2006, Detective Leslie M. Wyatt, III ("Detective Wyatt") of the New Hanover County Sheriff's Office initiated a narcotics "sting" operation. Between approximately 10:30 and 11:00 a.m. that morning, Detective Wyatt, in the company of Detective Jonathan Hart ("Detective Hart"), instructed an informant to call a man the informant had stated was a heroin dealer. Detective Wyatt had never personally used this informant before; however, his knowledge of the informant's reliability came from Detective Hart who had arrested the informant in the past. The informant had previously given reliable information that led to the arrest of another individual for trafficking in 1,200 bags of heroin. The informant made the call as requested using a speaker phone. Both detectives Wyatt and Hart listened to the call. Detective Wyatt testified that he heard a man agree to deliver one-half ounce of heroin, along with one-half ounce of "cutting" agent, to the informant in Wilmington in return for $1,600.00. The man stated that he would begin his trip to Wilmington approximately thirty minutes after the termination of the call, and that the trip would take him a while. A KFC restaurant on Dawson Street was the predetermined location for the heroin transaction.

The informant told Detective Wyatt he did not know the true name of the man whose number he called and knew him only as "Junior." He described "Junior" as an older black male, probably in his fifties; that "he possibly would be driving an older model Mercedes or a newer model mid-size SUV, both possibly brown in color and both having South Carolina registrations"; and that he believed "Junior" lived in Charleston, and that would be his point of origin for the arranged transaction.

At approximately 1:30 p.m., Detective Wyatt met with other officers and organized a plan to attempt the arrest of "Junior" for drug related activities. "The plan was to have detectives scattered about

**STATE v. GREEN**

[194 N.C. App. 623 (2009)]

Highway 74/76 from about . . . the Cape Fear Memorial Bridge, Third and Dawson, back a little ways past Leland." The officers took their positions between 2:00 p.m. and 2:30 p.m. Detective Wyatt further testified that he had around six additional officers involved in the operation, and that Detective James Gore was stationed the farthest outside of Wilmington, "approximately 10 to 15 miles[.]" Detective Gore was waiting on Highway 17, where it intersects with Highway 87. Because it is possible to arrive from Charleston into Wilmington from either route, other officers were stationed both along Highway 17 to the south, and along Highway 74/76, to a distance of approximately 6.5 miles to the east. Detective Wyatt estimated an arrival time in Wilmington between 3:30 p.m. and 4:00 p.m.

At approximately 3:15 p.m., Detective Wyatt instructed the informant to call "Junior" and obtain a more definite estimate for his time of arrival. The informant told him "Junior" said he was approximately thirty to forty minutes away. At approximately 3:35 p.m., Detective Gore observed a brown Dodge Durango SUV with South Carolina registration pass him heading towards Wilmington on Highway 17. Detective Gore informed Detective Wyatt, then followed the Durango, which he observed an older black male was driving, and read out the registration tag information to Detective Wyatt. Detective Wyatt determined from the registration information that the Durango was registered to defendant, who lived in North Charleston. Other officers, including Detective Wyatt, joined Detective Gore in following defendant.

Shortly after defendant crossed from Brunswick County into New Hanover County, several officers stopped defendant's vehicle, and used their own vehicles to box in defendant's Durango. The officers removed defendant from the Durango and placed him in handcuffs. Detective Wyatt went to the Durango, climbed inside, opened up the center console, and discovered a black bag. The contents of the bag were later determined to be heroin and a cutting agent.

Defendant was indicted on 3 April 2006 for trafficking in heroin by transportation, possession and manufacturing, maintaining a vehicle to keep and sell heroin, possession of marijuana, and possession of drug paraphernalia. Defendant moved to suppress the evidence found pursuant to his stop, which motion was denied by order entered 30 November 2006. Defendant was tried by jury at the 28 May 2007 Criminal Session of New Hanover County Superior Court. The trial court dismissed the manufacturing charge, and defendant was convicted on all remaining charges. By order entered 4 June 2007,

defendant was sentenced to a cumulative 140 months minimum and 168 months maximum prison term. Defendant appeals.

*Standard of Review*

It is well established that the standard of review in evaluating a trial court's ruling on a motion to suppress is that the trial court's findings of fact are conclusive on appeal if supported by competent evidence, even if the evidence is conflicting. The trial court's conclusions of law, however, are fully reviewable.

*State v. Nixon*, 160 N.C. App. 31, 33, 584 S.E.2d 820, 822 (2003) (citation omitted). This Court discussed the standard of review applicable to warrantless searches of vehicles at some length in *Nixon. Id.* at 34-37, 584 S.E.2d at 822-24. The *Nixon* Court made the following relevant determinations with regard to assessing the existence of probable cause in the search of a motor vehicle on a public roadway:

A search of a motor vehicle which is on a public roadway or in a public vehicular area is not in violation of the Fourth Amendment if it is based on probable cause, even though a warrant has not been obtained. *State v. Isleib*, 319 N.C. 634, 638, 356 S.E.2d 573, 576 (1987). Information from a [confidential reliable informant] can form the probable cause to justify a search. *State v. Holmes*, 142 N.C. App. 614, 544 S.E.2d 18, *cert. denied*, 353 N.C. 731, 551 S.E.2d 116 (2001). "In utilizing an informant's tip, probable cause is determined using a 'totality-of-the circumstances' analysis which 'permits a balanced assessment of the relative weights of all the various indicia of reliability (and unreliability) attending an informant's tip.'" *Holmes*, 142 N.C. App. 614, 621, 544 S.E.2d 18, 22 (2001) (quoting *State v. Earhart*, 134 N.C. App. 130, 133, 516 S.E.2d 883, 886 (1999)). This standard was established in [*Illinois v.*] *Gates*, 462 U.S. 213, 76 L. Ed. 2d 527 (1983).

*Nixon*, 160 N.C. App. at 37, 584 S.E.2d at 824.

The standard for determining whether probable cause existed to conduct a warrantless search of defendant's person and vehicle is basically the same for information received from either an anonymous tip or a confidential informant. Both situations must be scrutinized under a "totality of the circumstances" test to determine "basis of knowledge" and "reliability" or "veracity" of the information as a basis for probable cause.

*Id.* at 34, 584 S.E.2d at 822.

**STATE v. GREEN**

[194 N.C. App. 623 (2009)]

When probable cause is based on an informant's tip a totality of the circumstances test is used to weigh the reliability or unreliability of the informant. Several factors are used to assess reliability including: "(1) whether the informant was known or anonymous, (2) the informant's history of reliability, and (3) whether information provided by the informant could be and was independently corroborated by the police." *State v. Collins*, 160 N.C. App. 310, 315, 585 S.E.2d 481, 485 (2003).

Defendant contends the reliability of the informant was not sufficiently established to support the trial court's findings of fact and conclusions of law. We disagree.

In denying defendant's Motion to Suppress the trial court made the following pertinent findings of fact:

2. That on February 1, 2006, Detective L.M. Wyatt, III of the New Hanover County Sheriff's Office received information from a confidential informant that he could obtain a quantity of heroin from an individual named "Junior" who was from the Charleston, S.C. area.

3. That other detectives with the Sheriff's Office had dealt with this informant before and said informant had provided reliable and correct information which led to an arrest for trafficking in heroin of over 1200 bags of heroin.

4. Detective Wyatt received this information from the confidential informant at about 10:30 or 11:00 A.M. and at that time was also in the presence of Detective J. Hart who had personally dealt with this informant and knew of the reliability of said informant.

5. That at about that time, Detective Wyatt had the informant call a telephone with the number (843) 475-5374 and request one-half ounce of heroin and one-half ounce of cutting agent to be delivered to the informant, and this call was on speaker phone and monitored by both Detective Wyatt and Detective Hart.

6. That Detective Wyatt heard the person on the other end of the phone agree to bring the heroin for an agreed upon price of $1600 and that he would be leaving in about 30 minutes and it would take him a while to get to Wilmington, and this call was placed at about 11:00 A.M. on February 1, 2006.

7. After the placing of the call, Detective Wyatt was told by the informant that the person on the phone went by the name "Junior", that he was an older black male in his 50's, and that he would be driving either an older model Mercedes or a newer model mid-size SUV, both brown in color, with South Carolina registration.

8. Later that day, after estimating that the travel time from Charleston would have the subject delivering the heroin to arrive in Wilmington about 3:30 or 4:00 P.M., Detective Wyatt had other detectives along the likely route to be used to be on the lookout for the described vehicles with South Carolina registration.

9. Detective Wyatt also had the informant place a call to the subject who was to deliver the heroin at about 3:15 P.M. in which the subject advised that he was about 30 to 40 minutes away from Wilmington.

10. Detective Gore with the New Hanover County Sheriff's Office was looking for a vehicle matching the description given by the informant beginning at about 2:15 or 2:30 P.M. and was conducting this lookout from a position at the intersection of Highway 17 and Highway 87 in Brunswick County.

11. During the period from about 2:15 to 3:35 P.M., Detective Gore did not see any vehicles matching the description given by the informant as the vehicles which might be delivering the heroin.

12. Detective Gore was told by Detective Wyatt of the information given by the informant regarding the distance from Wilmington of [sic] the suspect's car.

13. At about 3:30 or 3:35, Detective Gore saw a brown SUV with South Carolina registration pass his location. Detective Gore got close to the brown SUV and was able to see that it was a brown Dodge Durango with South Carolina registration 509 UYC and that it was being driven by an older black male.

14. Detective Wyatt then checked the registration of the brown Dodge Durango and determined that that vehicle was registered to a Lloyd Green of North Charleston, South Carolina.

15. Detectives stopped the brown Dodge Durango at the intersection of 3rd Street and Dawson Streets in the City of

Wilmington, and upon getting the defendant out of the car, searched the center console and found what later proved to be 13.4 grams of heroin and another bag of cutting agent in a black pouch inside the console, as well as a small blue bag containing marijuana.

Based upon these Findings the trial court reached the following pertinent conclusions of law:

2. That the informant utilized by Detective Wyatt in this matter was a known and reliable informant who had previously provided information which led to an arrest involving 1200 bags of heroin and [was] not an anonymous tipster.

3. That the officers were able to verify and corroborate much of the information provided by the known and reliable informant, relating to time of arrival, vehicle being operated by the suspect, and physical description of the suspect.

4. The corroboration and verification of this information, together with the monitored phone call gave the detectives, when seeing the defendant's car and confirming that it was from the Charleston, S.C. area, being driven by an older black male, a brown later model mid-size SUV, with South Carolina registration, arriving at the time which it was expected, and being the only such vehicle to pass along the main route from Charleston to Wilmington on that day during an approximately 1 and ½ hour time period, probable cause to believe that a felony was being committed by the defendant in their presence and that a stop and search of this defendant was justified and not in violation of defendant's State or Federal constitutional rights.

5. The stop of the defendant's vehicle on February 1, 2006 was supported by probable cause, as was the subsequent search of said vehicle.

. . .

7. Upon the search of the vehicle and the discovery of what the officers believed based upon their training and experience to be the ½ ounce of heroin that the confidential and reliable informant had ordered upon the officers' instructions, the arrest of the defendant was also supported by probable cause.

We review a trial court's ruling on a motion to suppress to determine whether the findings of fact are supported by competent evidence. If so they are binding on appeal, even there if there is evidence to the contrary. In determining whether the trial court's findings are supported by the evidence we look at the entire record. *State v. Moore*, 316 N.C. 328, 333, 341 S.E.2d 733, 737 (1986) (citation omitted). After reviewing the record in the instant case, it is clear there is competent evidence to support each of the trial court's findings of fact set forth above. Thus they are binding on appeal.

In cases involving an informant's tip probable cause is determined by a totality of the circumstances test after balancing the various indicia of reliability and unreliability attendant to the informant's tip. *See Collins*, 160 N.C. App. 310, 315, 585 S.E.2d 481, 485 (2003); *see also State v. Chadwick*, 149 N.C. App. 200, 203, 560 S.E.2d 207, 209 (2002) (citation omitted). Applying the balancing test for probable cause based on an informant's tip, as set forth in *Collins, supra,* the evidence of record in the instant case supports the trial court's findings and conclusions that there existed probable cause to stop and search the defendant's vehicle.

Therefore, the trial court did not err in denying defendant's motion to suppress.

AFFIRMED.

Judge ARROWOOD concurs.

Judge JACKSON dissents in a separate opinion.

Judge ARROWOOD concurred in this opinion prior to 31 December 2008.

JACKSON, Judge dissenting.

At issue is the propriety of the trial court's denial of defendant's motion to suppress evidence obtained as a result of a warrantless search of his vehicle. I would hold that the informant's tip in the case *sub judice* was insufficient under the totality of the circumstances to establish probable cause to justify the warrantless search of defendant's vehicle. Therefore, I dissent.

We review the trial court's ruling on defendant's motion to suppress by asking whether the trial court's findings of fact are sup-

ported by competent evidence and whether those findings support the court's conclusions of law. *See State v. Edwards*, 185 N.C. App. 701, 702, 649 S.E.2d 646, 648 (citing *State v. McHone*, 158 N.C. App. 117, 120, 580 S.E.2d 80, 83 (2003)), *disc. rev. denied*, 362 N.C. 89, 656 S.E.2d 281 (2007). We review a trial court's conclusions of law on a motion to suppress *de novo*. *See id.* (citing *State v. Chadwick*, 149 N.C. App. 200, 202, 560 S.E.2d 207, 209, *disc. rev. denied*, 355 N.C. 752, 565 S.E.2d 672 (2002)).

In the case *sub judice*, the trial court made the following relevant conclusions of law:

4. The corroboration and verification of this information, to-gether with the monitored phone call gave the detectives, when seeing the defendant's car and confirming that it was from the Charleston, S.C. area, being driven by an older black male, a brown later model mid-size SUV, with South Carolina registra-tion, arriving at the time which it was expected, and being the only such vehicle to pass along the main route from Charleston to Wilmington on that day during an approximately 1 and ½ hour time period, probable cause to believe that a felony was being committed by the defendant in their presence and that a stop and search of this defendant was justified and not in violation of defendant's State or Federal constitutional rights.

5. The stop of defendant's vehicle on February 1, 2006 was supported by probable cause, as was the subsequent search of said vehicle.

Our Supreme Court has explained that

[a] search of a motor vehicle which is on a public roadway or in a public vehicular area is not in violation of the [F]ourth [A]mend-ment if it is based on probable cause, even though a warrant has not been obtained.

*State v. Isleib*, 319 N.C. 634, 638, 356 S.E.2d 573, 576 (1987) (citing *United States v. Ross*, 456 U.S. 798, 809, 72 L. Ed. 2d 572, 584). *See also State v. Earhart*, 134 N.C. App. 130, 133, 516 S.E.2d 883, 886 ("A search of a vehicle on a public roadway or public vehicular area is properly conducted without a warrant as long as probable cause exists for the search."), *appeal dismissed*, 351 N.C. 112, 540 S.E.2d 372 (1999). Probable cause may be established by an informant's tip. *State v. Holmes*, 142 N.C. App. 614, 620-21, 544 S.E.2d 18, 22-23, *cert. denied*, 353 N.C. 731, 551 S.E.2d 116 (2001). Whether the tip is

received from an anonymous informant or a confidential informant, "a totality of the circumstances test" must be employed "to determine [the] basis of knowledge and reliability or veracity of the information as a basis for probable cause." *State v. Nixon*, 160 N.C. App. 31, 34, 584 S.E.2d 820, 822 (2003) (internal quotation marks omitted). *See also Illinois v. Gates*, 462 U.S. 213, 76 L. Ed. 2d 527, *reh'g denied*, 463 U.S. 1237, 77 L. Ed. 2d 1453 (1983); *State v. Hughes*, 353 N.C. 200, 203, 539 S.E.2d 625, 628 (2000). When an informant is without sufficient reliability to be considered a confidential, reliable informant, the informant is treated as an anonymous informant. *Hughes*, 353 N.C. at 205, 539 S.E.2d at 629. To the extent that reliability is wanting, independent corroboration by police officers "or [a] greater level of detail" is required. *See Hughes*, 353 N.C. at 209, 539 S.E.2d at 631; *Nixon*, 160 N.C. App. at 34, 584 S.E.2d at 822. This Court has indicated that more evidence may be required when the officer is acting without a warrant. *See Nixon*, 160 N.C. App. at 34, 584 S.E.2d at 823.

Initially, in the case *sub judice*, Detective Hart vouched for the informant's reliability to Detective Wyatt. Detective Hart had worked with the informant before. Detective Wyatt, however, had not worked with the informant, and he relied solely upon Detective Hart's endorsement that the informant had provided reliable information in an earlier drug arrest. Detective Hart did not testify in the hearing on defendant's motion to suppress. We have held that when probable cause is based upon an informant's tip, "[p]robable cause may not be established by the testimony of only the arresting officer that he or she was told by another officer that the information was reliable." *Nixon*, 160 N.C. App. at 37, 584 S.E.2d at 824. *See also Hughes*, 353 N.C. at 204, 539 S.E.2d at 628-29. Accordingly, on these facts, I would hold that the informant's tip could not have established probable cause to justify the warrantless search. Because Detective Wyatt acted without a warrant and because he had no independent basis upon which to classify the informant as reliable, Detective Wyatt bore a heavier burden to corroborate independently the informant's information to justify the warrantless search and seizure. *See Hughes*, 353 N.C. at 205, 539 S.E.2d at 629; *Nixon*, 160 N.C. App. at 34, 584 S.E.2d at 823.

Next, the informant's tip was comparatively nonspecific in view of precedent established by the United States Supreme Court, the North Carolina Supreme Court, and this Court. In *Hughes*, our Supreme Court analyzed precedent from the United States Supreme Court by explaining that

[i]n *Alabama v. White*, 496 U.S. 325, 110 L. Ed. 2d 301 (1990), the United States Supreme Court concluded that an anonymous tip could, under the totality of the circumstances, be sufficiently reliable to pass constitutional muster. *Id.* at 332, 110 L. Ed. 2d at 310. In *White*, a case described by the Court as "close," the anonymous caller indicated that an individual, Vanessa White, would have in her possession an ounce of cocaine in a brown attaché case. During the call, the informant told the police the precise apartment building and apartment number from which White would be leaving and the particular time she would leave, and also gave detailed information as to White's car and her final destination, Dobey's Motel. The police then observed White leave the specified apartment building, get into the car described in detail by the informant, and take the most direct route to the motel before they finally stopped White just short of her destination. *Id.* at 327, 110 L. Ed. 2d 306-07.

*Hughes*, 353 N.C. at 205, 539 S.E.2d at 629. In *Hughes*, the Court held that the anonymous informant's tip failed to provide reasonable suspicion—"a less demanding standard than probable cause." *White*, 496 U.S. at 330, 110 L. Ed. 2d at 309; *Hughes*, 353 N.C. at 209, 539 S.E.2d at 632. In pertinent part, the Court provided that

> [i]n this case, a review of the facts shows that Detectives Bryan and McAvoy had a physical description of a dark skinned Jamaican whose name and clothing description could not be recalled, who was going to North Topsail Beach, who "sometimes" came to Jacksonville on weekends before dark, who "sometimes" took a taxi, and who "sometimes" carried an overnight bag. The only other information the officers had was that defendant might be arriving on the 5:30 p.m. bus.
>
> . . . .
>
> Even more important for purposes of its reliability, the information provided did not contain the "range of details" required by *White* and *Gates* to sufficiently predict defendant's specific future action, but was instead peppered with uncertainties and generalities. The tipster stated that "Markie" "sometimes" came to Jacksonville on weekends, "sometimes" took a taxi from the bus station, "sometimes" carried an overnight bag, and would be headed to North Topsail Beach. As well as being vague, these statements are broad enough to be applied to many of the bus station patrons. It is highly likely that any number of weekend

travelers to Jacksonville, where a large military base is located, would take a bus; that they might bring an overnight bag; and that unless they had someone pick them up from the station, they would take a taxi to their final destination, which could include North Topsail Beach. Because we find that the tip taken as a whole was insufficient to create a reasonable suspicion, we next look to see if it was made sufficient by independent police corroboration.

It appears from the record that the only items of the informant's statement actually confirmed by the officers before the stop were that they saw a man meeting the suspect's description come from around a bus that had arrived in Jacksonville at approximately 3:50 p.m., that he was carrying an overnight bag, and that he left the station by taxi. Without more, these details are insufficient corroboration because they could apply to many individuals. . . .

Likewise, *reasonable suspicion does not arise merely from the fact that the individual met the description given to the officers.* . . .

. . . .

Here, before stopping the taxi, the officers did not seek to establish the reliability of the assertion of illegality. They did not confirm the suspect's name, the fact that he was Jamaican, or whether the bus from Rocky Mount had originated in New York City. Moreover, because the officers stopped the taxi before it reached the Triangle area,[1] they failed to corroborate whether the individual might be headed to North Topsail Beach, as the informant had stated, or to Wilmington, Richlands, Kinston, or some other destination.

*Hughes*, 353 N.C. at 208-09, 539 S.E.2d at 631-32 (emphasis added) (internal citation omitted). *See also Earhart*, 134 N.C. App. at 134, 516 S.E.2d at 887 (concluding that probable cause existed upon an anonymous tip that a white Trans Am carrying marijuana would arrive at a specific residence on 27 or 28 April and might be accompanied by a blue Subaru coupled with a tip from an agent of the State Bureau of Investigation "that a person whose name sounded like 'Airhart' was

---

1. In *Hughes*, the Court described the Triangle area as an area where "Highway 17 [South] splits in two directions—towards Wilmington and Topsail Beach, North Carolina, or towards Richlands, North Carolina. A person must pass through the Triangle before it can be determined in which of these directions he or she is going." *Hughes*, 353 N.C. at 202, 539 S.E.2d at 628.

selling cocaine and marijuana from his home on North Spot Road and that he drove a white Trans Am, a blue Chevrolet Cavalier, and a rust Jeep"); *State v. Collins,* 160 N.C. App. 310, 318, 585 S.E.2d 481, 487 (2003) (concluding that probable cause existed upon an informant's tip that directed police to a scheduled meeting at a particular time at a local convenience store with "Doug," a black man in his thirties who drove a late 1980's model, white, four-door Cadillac Brougham with spoke or wire hubcaps).

In the case *sub judice,* the informant provided that a man he knew as "Junior" would come that afternoon to a KFC restaurant located at the intersection of 16th Street and Dawson Street in Wilmington, North Carolina. "Junior" was described as an older black man, probably in his fifties, who *"possibly* would be driving an older model Mercedes or newer model mid size SUV, both *possibly* brown in color and both having South Carolina registrations." (Emphasis added). The informant's description of "Junior" and his "possible" vehicles was vague, and served to cast too-wide a net of potential suspects. "Junior's" route of travel also was unknown. Furthermore, Charleston is a substantial city, and must necessarily include many older black males, older model Mercedes, and newer mid-size SUV's—likely including some which are "possibly" brown in color. From Detective Wyatt's testimony, the State proved only that— according to the anonymous tipster—the make, model, and color of "Junior's" vehicles, and whether "Junior" actually would be driving either an older model Mercedes or a newer model mid-size SUV were only "possibilities." Thus, it is possible that "Junior" would be driving an entirely different vehicle.

At the suppression hearing, the following exchange took place between defense counsel and Detective Wyatt:

Q: So it would be fair to say you all were looking for an older black man driving a dark-colored SUV or a Mercedes with South Carolina tags going through Wilmington. That would be all of the information, a summary of all of the information that you had in hand?

A: Correct.

Furthermore, even though Detective Wyatt had obtained a specific location—the KFC at 16th Street and Dawson Street in Wilmington—for the arranged transaction, he decided not to place any of his officers at that location. Instead, Detective Wyatt stopped

defendant at 3rd Street, not 16th Street. Allowing defendant to arrive at the predetermined location or else stopping defendant just short of the predetermined location would have provided significantly more corroboration of the informant's tip. *Compare Hughes*, 353 N.C. at 209, 539 S.E.2d at 632 ("[B]ecause the officers [prematurely] stopped the taxi before it reached the Triangle area, they failed to corroborate whether the individual might be headed to North Topsail Beach, as the informant had stated, or to Wilmington, Richlands, Kinston, or some other destination.") *with White*, 496 U.S. at 326-28, 110 L. Ed. 2d at 306-07 (holding that an officer had reasonable suspicion when he stopped defendant "just short" of a predicted motel after an anonymous tipster provided specific details regarding the apartment from which defendant would depart, defendant's time of departure, defendant's brown attaché case containing cocaine, and defendant's brown Plymouth station wagon with a broken right taillight, in addition to police observations of defendant leaving the specified apartment at the designated time in a car matching the tipster's description).

I believe the informant's reliability in the case *sub judice* pales in comparison to that of the informant in *White*—a "close" case in which only reasonable suspicion was found upon a tip from an anonymous tipster who provided a host of specific facts. I believe this case is much closer to *Hughes*—a case in which reasonable suspicion, and, therefore, probable cause, was lacking. Accordingly, without any better information as to (1) "Junior's" real name; (2) "Junior's" distinguishing physical features; (3) the make, model, color, year, or other identifying features of "Junior's" vehicle—beyond mere. "possibilities;" or (4) "Junior's" course of travel, and without sufficient independent, pre-stop corroboration of the informant's tip, I would hold that the trial court erred in concluding that the detectives had probable cause in the case *sub judice*.