State v. Davis

New trial.

Judges WEBB and PHILLIPS concur.

STATE OF NORTH CAROLINA v. RODNEY MICHAEL DAVIS

No. 8321SC484

(Filed 17 January 1984)

1. **Arrest and Bail § 3.2; Searches and Seizures § 9— probable cause to stop vehicle—seizure of shotgun in plain view**

   An officer had probable cause to stop the vehicle operated by defendant and to arrest defendant for operating the vehicle without a license upon the basis of information obtained from a computer check with the Department of Motor Vehicles that defendant had no driver's license. Even if the stop had been based solely on information received from two unnamed informants, such information was sufficiently reliable under the totality of the circumstances to provide support for a lawful detention of defendant where the police independently verified information given to them by the informants naming defendant as an alleged robber and describing defendant and the color, make and location of the car defendant was driving, and where the informants gave police accurate details of a robbery which had not been reported in the newspapers. Therefore, the officer lawfully seized without a warrant a sawed-off shotgun which he observed in plain view protruding from underneath the front seat of defendant's car when he asked defendant to exit the car. G.S. 20-183.

2. **Searches and Seizures § 34— seizure of shotgun from car—inadvertent discovery**

   An officer's discovery of a sawed-off shotgun in defendant's car was inadvertent within the meaning of the plain view doctrine where the officer stopped defendant for operating a motor vehicle without a license and observed the barrel of the shotgun sticking out from under the front seat when he asked defendant to exit the car, notwithstanding the officer had received information from a radio broadcast that the person driving the car in question was considered to be armed and dangerous.

APPEAL by defendant from *Rousseau, Judge.* Judgments entered 9 December 1982 in Superior Court, FORSYTH County. Heard in the Court of Appeals 6 December 1983.

Defendant was indicted on seven counts of armed robbery, one count of larceny of an automobile, two counts of first degree kidnapping and one count of first degree murder. Prior to trial

defendant moved to suppress evidence seized from an automobile he was driving when stopped by police officers on 17 August 1982. This motion was denied, and defendant thereafter pleaded guilty to the robbery and larceny counts, to second degree kidnapping and to accessory after the fact of murder. He was sentenced to a total of 108 years in prison.

Defendant appeals from the denial of his motion to suppress evidence found in the automobile and from the judgments and commitments.

*Attorney General Edmisten, by Assistant Attorney General Thomas G. Meacham, Jr., for the State.*

*B. Jeffrey Wood, for defendant appellant.*

ARNOLD, Judge.

During the hearing on defendant's motion to suppress, the following evidence was presented: Prior to 17 August 1982 the Winston-Salem Police Department was investigating several armed robberies that had occurred in the eastern part of the city. Around noon on 17 August Detective Branscome contacted two individuals who lived in the area and questioned them about the robberies. They informed Branscome that the defendant Rodney Davis had told them about robbing people and placing them in the trunk of a vehicle. They also mentioned the robbery of an elderly man at a bus station.

At the time they were being questioned, information of the bus station robbery had not been reported in the news. Defendant was described as a black male, dark complected, 18 to 20 years of age, and between 5'6" and 5'7". Branscome was told that defendant drove a gold 1969 Plymouth and where it was parked. Branscome and other law enforcement officers later observed an automobile fitting this description and parked in the location given by the individuals. After checking with the Department of Motor Vehicles, the officers learned that the vehicle did not belong to defendant and that he did not have an operator's license. The officers watched the car for about thirty minutes and left. When they returned, it was gone. An all-points bulletin was then issued directing police to be on the lookout for a 1969 gold Plymouth with license #AES-44, driven by a person with defend-

ant's characteristics and wearing a red sweater. The police were further informed that the driver had no license and was armed.

Around 9:00 p.m. Officer Twitty spotted the Plymouth parked at a local restaurant. He observed defendant walk out of the restaurant and drive away in the Plymouth. Officer Twitty then stopped defendant for operating a motor vehicle without a license. As defendant was stepping out of the car, Twitty observed the barrel of a shotgun protruding from under the front seat. He pulled the gun out and discovered that it was a sawed-off shotgun. Defendant was arrested for driving without a license, possession of a weapon capable of mass destruction and carrying a concealed weapon. Several days later he was indicted on the armed robbery, larceny and murder charges.

In his order denying the motion to suppress evidence of the shotgun, the trial judge made findings of fact consistent with the foregoing evidence. He concluded that since Officer Twitty had probable cause to believe that defendant was operating a motor vehicle without a license, he had a right to stop defendant; and that after stopping defendant and observing the shotgun in plain view, Officer Twitty had a right to arrest defendant and to search the vehicle. The trial judge further concluded that the arrest of defendant and the seizure of the shotgun were lawful; and that none of defendant's constitutional rights were violated.

Defendant argues that his arrest was unlawful, and that the search of the automobile and seizure of items therein were unlawful. He contends that his arrest was unlawful on two grounds: (1) The police did not have probable cause to stop the vehicle operated by defendant because the information upon which they relied came from unreliable informants; and (2) defendant's arrest for a traffic violation was a mere pretext to furnish police with the opportunity to stop the automobile and to seize the shotgun without a warrant. We find no merit to either ground and affirm the denial of defendant's motion to suppress.

[1] Defendant's first ground is fallacious because the evidence showed, and the trial judge found, that Officer Twitty stopped defendant's car based upon information that defendant was driving without a license. This information was obtained from a computer check with the Department of Motor Vehicles and not from the two informants. Pursuant to G.S. 20-183, law enforcement of-

ficers have the power to stop any motor vehicle for the purpose of determining whether the vehicle is being operated in violation of the Motor Vehicle Act and to arrest on sight or upon warrant any person found violating this Act.

Even if the stop had been based solely on the information received from the unnamed informants, we believe this information was sufficiently reliable to provide support for a lawful detention of defendant. "(A) law officer . . . may lawfully detain a person where there is a need for immediate action, if, upon personal observation or reliable information, he has an honest and reasonable suspicion that the suspect either has committed or is preparing to commit a crime." *State v. Bridges*, 35 N.C. App. 81, 84, 239 S.E. 2d 856, 858 (1978). Under the totality of circumstances presented here, the informant's information was sufficiently reliable.

In a recent decision, the United States Supreme Court held that a "totality of circumstances" standard was proper for determining probable cause for issuance of a search warrant based on information received from informants. *Illinois v. Gates*, --- U.S. ---, 76 L.Ed. 2d 527, 103 S.Ct. 2317 (1983). While this decision deals with information received from an informant and its reliability to support a search warrant, we believe that the same analysis applies to a determination of the reliability of an informant's tip to support a suspect's detention.

In *Gates* the affidavit submitted in support of a search warrant was based upon an anonymous letter mailed to police. The author of this letter indicated that Gates and his wife were engaged in drug trafficking. He also gave details of an alleged imminent drug transaction. These details were later corroborated through independent police investigation. The state courts held that the letter and affidavit were inadequate to sustain a determination of probable cause for the issuance of a search warrant under the "two-pronged test" established in *Aguilar v. Texas*, 378 U.S. 108, 12 L.Ed. 2d 723, 84 S.Ct. 1509 (1964), and *Spinelli v. United States*, 393 U.S. 410, 21 L.Ed. 2d 637, 89 S.Ct. 584 (1969). Under this test the affidavit must reveal the informant's basis of knowledge and provide sufficient facts to establish either the informant's credibility or reliability of the information. The Gates Court abandoned the "two-pronged test" and replaced it with a

"totality of circumstances" analysis. The Court emphasized that the informant's veracity, reliability or basis of knowledge are merely "relevant considerations in the totality of circumstances analysis." *Illinois v. Gates, supra,* --- U.S. at ---, 76 L.Ed. 2d at 545, 103 S.Ct. at ---.

Another relevant consideration emphasized by the *Gates* Court was corroboration of details in an informant's tip by independent police work. The United States Supreme Court reversed the judgment of the Illinois Supreme Court, noting that the magistrate correctly found probable cause to issue a search warrant based on the anonymous letter. The Court reasoned that this letter had been corroborated in substantial part by police efforts and contained information of a character likely obtained only from Gates or from someone familiar with Gates' plans.

Like *Gates,* the information received from the unnamed individuals in the case on appeal was substantially corroborated by an independent police investigation. The trial judge found that after the police were given defendant's name as the alleged robber, a description of defendant, and the color, make and location of the car defendant was driving, they independently verified all of this information. The trial judge further found that the informants gave the police accurate details of a robbery which had not been reported in the newspapers. This corroboration coupled with information that was of a character likely obtained from the defendant himself or from someone familiar with him, was clearly sufficient to support a lawful detention of defendant.

[2] We next find no merit to defendant's argument that his arrest on a traffic violation was a mere pretext for the officers to gain access to the automobile where they knew a shotgun would be hidden; and that his arrest and seizure of the gun were therefore unlawful. The trial judge found that Officer Twitty stopped defendant for operating a motor vehicle without a license; and that when he asked defendant to exit the car he observed the barrel of a shotgun sticking out from under the front seat. The evidence and law clearly support the conclusion that the gun was in plain view; and that the officers had a right to seize it.

The four elements of the plain view doctrine are a prior valid intrusion, inadvertent discovery, a nexus between the items and criminal behavior and plain view. *State v. Wynn,* 45 N.C. App.

State v. Davis

267, 262 S.E. 2d 689 (1980). As earlier noted, Officer Twitty possessed the authority to stop defendant pursuant to G.S. 20-183. Defendant now argues that the "inadvertent discovery" element was not met, because the unnamed individuals had told police that a sawed-off shotgun would be underneath the front seat of the Plymouth automobile. Officer Twitty, however, testified that he stopped defendant after receiving a radio broadcast that a black male was driving a gold Plymouth without an operator's license and that he was armed and dangerous. At the time Twitty stopped defendant he did not know he was a robbery suspect or that he was armed with a sawed-off shotgun. "[T]he mere expectation that the evidence will be discovered does not negate the inadvertency element." *Id.* at 269, 262 S.E. 2d at 692. Here, Officer Twitty expected that defendant would be armed but not that he would be in possession of an illegal weapon.

This Court recently found that the inadvertency requirement of plain view was met where police officers received a telephone call from an "unknown tipster" who reported that a house near a dairy farm in Lenoir County was full of marijuana; that the officers went to the vicinity of the farm to conduct an investigation and that while looking through the screen door of a house they observed marijuana inside. *State v. Prevette*, 43 N.C. App. 450, 259 S.E. 2d 595 (1979), *disc. review denied*, 299 N.C. 124, 261 S.E. 2d 925, *cert. denied*, 447 U.S. 906, 64 L.Ed. 2d 855, 100 S.Ct. 2988 (1980). In concluding that the inadvertency requirement was met, this Court cited the following language in *State v. Howard*, 274 N.C. 186, 202, 162 S.E. 2d 495, 506 (1968): "If the officers' presence was lawful, the observation and seizure of what was then and there apparent could not in itself be unlawful." This statement equally applies to the situation here.

The denial of defendant's motion to suppress evidence seized from the automobile is

Affirmed.

Judges JOHNSON and PHILLIPS concur.