STATE OF NORTH CAROLINA v. CORNELIUS RENEUD NIXON, Defendant

No. COA02-613

(Filed 19 August 2003)

**1. Search and Seizure— warrantless search—standard of review for informant information**

The trial court did not err in a possession with intent to sell and distribute marijuana, possession of cocaine, and carrying a concealed weapon case by denying defendant's motion to suppress evidence seized under a warrantless search of defendant's person and vehicle based on an informant's tip, because: (1) the standard for determining whether probable cause existed to con-

duct a warrantless search of defendant's person and vehicle is basically the same for both a confidential informant and an anonymous tip, although some corroboration of the information or greater level of detail is generally necessary for an anonymous tip; and (2) the trial court made careful and thorough findings of fact, and properly scrutinized the situation under the totality of circumstances test to determine basis of knowledge and reliability or veracity of the information as a basis for probable cause.

**2. Search and Seizure— warrantless search—informant information passed through several officers**

The trial court did not err in a possession with intent to sell and distribute marijuana, possession of cocaine, and carrying a concealed weapon case by concluding that there was probable cause to support the warrantless search of defendant's vehicle and defendant's subsequent arrest based on information from an informant passed from a first officer through several officers, because: (1) the probable cause of the first officer was established through the testimony before the trial court of the officer who received information from the informant; and (2) once the arresting officer corroborated the description of defendant and his presence at the named location, that officer had reasonable grounds to believe a felony was being committed in his presence which in turn created probable cause to stop and search defendant.

Appeal by defendant from order entered 29 January 2002 by Judge Anthony M. Brannon in Onslow County Superior Court. Heard in the Court of Appeals 11 March 2003.

*Attorney General Roy Cooper, by Assistant Attorney General David J. Adinolfi II, for the State.*

*Lanier & Fountain, by John W. Ceruzzi, for defendant appellant.*

ELMORE, Judge.

Sometime between 7:00 p.m. and 10:00 p.m. on 7 September 2000, Deputy Michael A. Stevens of the Jacksonville Police Department received an electronic page from an individual he described as a "confidential and reliable informant" (CRI). The CRI related information that an individual named "Corn," whom Deputy Stevens understood to be Cornelius Nixon (defendant), was going to meet an individual

named "Feanel" at the Hardee's restaurant in Beulaville in Duplin County in order to purchase marijuana from Feanel. The CRI further stated that after the transaction, "Corn" would possibly return to his home in the Brynn Marr area of Jacksonville, driving a burgundy Ford sport utility vehicle.

Deputy Stevens related this information to Sergeant Devon Bryan and told him that it had come from a CRI. Sergeant Bryan then passed the information to Sergeant Favious Howard. Sergeant Howard had recently stopped defendant for a traffic violation and remembered his address, and proceeded to set up surveillance of defendant's residence. Approximately fifteen minutes later, defendant pulled up to the curb in front of his residence. Defendant and his vehicle were subsequently searched, and marijuana was found in the pocket of defendant's shorts, a quantity of cocaine and marijuana was found in the vehicle, as well as a forty caliber semi-automatic pistol. Nothing in the record indicates that the arresting officer was acting pursuant to a warrant.

Defendant was charged with possession with intent to sell and deliver marijuana; manufacturing a controlled substance (marijuana); maintaining a place to keep a controlled substance; possession with intent to sell and deliver cocaine; manufacturing a controlled substance (cocaine); and carrying a concealed weapon.

Defendant tendered an Alford plea of guilty of possession with intent to sell and distribute marijuana, possession of cocaine, and carrying a concealed weapon. The State dismissed the remaining charges. Defendant brings this appeal of the trial court's denial of his motion to suppress evidence.

It is well established that the standard of review in evaluating a trial court's ruling on a motion to suppress is that the trial court's findings of fact are conclusive on appeal if supported by competent evidence, even if the evidence is conflicting. The trial court's conclusions of law, however, are fully reviewable. *State v. Earwood*, 155 N.C. App. 698, 574 S.E.2d 707 (2003).

The question raised by this appeal is whether the evidence seized was legally obtained based on two assignments of error: 1) defendant assigns error to the findings of fact as being unsupported by the evidence, and not supporting the conclusions of law; and 2) defendant also assigns error to the use of the confidential reliable informant (CRI) standard instead of the anonymous tip standard in evaluating the evidence.

## I. Standard

**[1]** We first address the defendant's second assignment of error, regarding the proper standard for evaluating the evidence. The standard for determining whether probable cause existed to conduct a warrantless search of defendant's person and vehicle is basically the same for information received from either an anonymous tip or a confidential informant. Both situations must be scrutinized under a "totality of the circumstances" test to determine "basis of knowledge" and "reliability" or "veracity" of the information as a basis for probable cause. *Illinois v. Gates*, 462 U.S. 213, 76 L. Ed. 2d 527, *reh'g denied*, 463 U.S. 1237, 77 L. Ed. 2d 1453 (1983); *State v. Hughes*, 353 N.C. 200, 203, 539 S.E.2d 625, 628 (2000). The difference in evaluating an anonymous tip is that the overall reliability is more difficult to establish, and thus some corroboration of the information or greater level of detail is generally necessary. *Compare State v. Arrington*, 311 N.C. 633, 319 S.E.2d 254 (1984) (applying the *Gates* totality of the circumstances test to an affidavit for a search warrant based on information given by two confidential informants), *with Illinois v. Gates*, 462 U.S. 213, 76 L. Ed. 2d 527 (1983) (establishing the standard in a case involving a tip sent to the police in an anonymous letter), *and State v. Davis*, 66 N.C. App. 98, 311 S.E.2d 19 (1984) (applying the *Gates* totality of the circumstances test to a tip sent to the police in an anonymous letter).

The standard for finding probable cause based on information supplied by a reliable informant before *Gates* was established in *Aguilar v. Texas*, 378 U.S. 108, 12 L. Ed. 2d 723 (1964) and later refined in *Spinelli v. United States*, 393 U.S. 410, 21 L. Ed. 2d 637 (1969). Those cases required that first, an affidavit for a search warrant must contain sufficient information as to how the informant obtained the information ("basis of knowledge"), and second, that the affidavit must establish the "reliability" of the informant. *Id.*

We note here that although the standard is the same, more evidence may be required when the officer is acting without a warrant. In the *State v. Harvey*, 281 N.C. 1, 7, 187 S.E.2d 706, 710 (1972), our Supreme Court noted, quoting the *Aguilar* case:

In *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L. Ed 2d 723, the Supreme Court of the United States dealt with questions concerning the Fourth Amendment requirements for obtaining a valid state search warrant. It said:

STATE v. NIXON

[160 N.C. App. 31 (2003)]

> [W]hen a search is based upon a magistrate's, rather than a police officer's, determination of probable cause, the reviewing court will accept evidence of a less "judicially competent or persuasive character than would have justified an officer in acting on his own without a warrant." * * * and will sustain the judicial determination so long as "there was substantial basis for [the magistrate] to conclude that [the articles searched for] were probably present." * * *

*Harvey* at 7, 187 S.E.2d at 710.

Under the *Aguilar-Spinelli* standard, this Court established the rule that to support the reliability prong of the test, a confidential informant must satisfy certain standards:

> This court has already established the "irreducible minimum" circumstances that must be set forth in support of an informant's reliability to sustain a warrant. *State v. Altman*, 15 N.C. App. 257 (filed 12 July 1972). In *Altman*, the affiant's statement that the confidential informant "has proven reliable and credible in the past" was held to meet the minimum standards to sustain a warrant. In the present case, the affiant's statement that the confidential informant had given "this agent good and reliable information in the past . . . that had been checked by the affiant and found to be true" also meets this minimum standard.

*State v. McCoy*, 16 N.C. App. 349, 351-52, 191 S.E.2d 897, 899 (1972), *cert. denied*, 282 N.C. 584, 193 S.E.2d 744 (1973).

After the *Gates* case, our Supreme Court adopted the reasoning of *Gates* in *State v. Arrington*, 311 N.C. 633, 319 S.E.2d 254 (1984), replacing the *Aguilar-Spinelli* standard but noting its relevance. Applying the *Gates* totality of the circumstances test in *State v. Hughes*, 353 N.C. 200, 539 S.E.2d 625 (2000), our Supreme Court further explained the effect of *Gates* by discussing the case of *Alabama v. White*, 496 U.S. 325, 110 L. Ed. 2d 301 (1990). In *White*, the United State Supreme Court concluded that in a "close" case, an anonymous tip could constitute probable cause if it could satisfy a "totality of the circumstances" analysis. *White*, 496 U.S. 325, 328, 110 L. Ed. 2d 301, 308 (1990). Our Supreme Court noted in reference to *White*:

> The Court in *White* emphasized . . . that the *Aguilar* and *Spinelli* standards for determining an informant's veracity, reliability, and basis of knowledge were important factors to consider in the context of an anonymous informant, as they were when involving a

confidential, reliable informant. The Court stated that although an anonymous tip by itself rarely demonstrated the needed reliability, the tip combined with corroboration by the police could show indicia of reliability that would be sufficient to meet this burden. . . . [*White*, 496 U.S. 325, 329, 110 L. Ed. 2d 301, 308 (1990).]

*Hughes*, 353 N.C. 200, 205, 539 S.E.2d 625, 629 (2000) (holding that under whatever scrutiny is applied, whether the informant was treated as reliable or anonymous, there was insufficient evidence to support probable cause when the officer who received the tip did not give any testimony establishing the informant's reliability, and there was insufficient detail and corroboration of the tip). So our appellate courts have applied the *Gates* standard, acknowledging the importance of the *Aguilar-Spinelli* factors and the heightened need for corroboration when evaluating an anonymous tip.

The trial court in the case *sub judice* made careful and thorough findings of fact and considered the totality of the circumstances. The trial court made findings that "Deputy Stevens personally knew the informant for the past two years and information provided by this informant had proven in the past to be reliable and had led to numerous narcotics arrests and convictions." Deputy Stevens had testified at the suppression hearing before the trial court:

Q [Mr. Askins:] And the informant that you mentioned, is that someone that you are familiar with, that you have worked with before?

A [Deputy Stevens:] Yes, sir, several times.

Q Has this informant proven to be reliable to you?

A Every time.

Q And given you information that led to arrests before?

A Yes, sir, numerous.

Q On any occasion has the informant given you information that was proven not to be reliable and was false?

A No, sir.

Q How—how long have you known this informant?

A Approximately two years.

Q Have you used this informant on a number of occasions?

A Yes, I have.

The trial court's findings are thus supported by the competent evidence of the officer's testimony. Because the standard is basically the same for both a confidential informant and an anonymous tip, and because the trial court applied the correct standard, we dismiss this assignment of error.

## II. Probable Cause

[2] Defendant also assigns error to the finding that there was probable cause to support the search and arrest.

A search of a motor vehicle which is on a public roadway or in a public vehicular area is not in violation of the Fourth Amendment if it is based on probable cause, even though a warrant has not been obtained. *State v. Isleib*, 319 N.C. 634, 638, 356 S.E.2d 573, 576 (1987). Information from a CRI can form the probable cause to justify a search. *State v. Holmes*, 142 N.C. App. 614, 544 S.E.2d 18, *cert. denied*, 353 N.C. 731, 551 S.E.2d 116 (2001). "In utilizing an informant's tip, probable cause is determined using a 'totality-of-the-circumstances' analysis which 'permits a balanced assessment of the relative weights of all the various indicia of reliability (and unreliability) attending an informant's tip.' " *Holmes*, 142 N.C. App. 614, 621, 544 S.E.2d 18, 22 (2001) (*quoting State v. Earhart*, 134 N.C. App. 130, 133, 516 S.E.2d 883, 886 (1999)). This standard was established in *Gates*, 462 U.S. 213, 76 L. Ed. 2d 527 (1983).

When information from an informant is passed from the first officer to another officer or through several officers, it is still necessary that the arresting officer at the time of the stop and search have probable cause. Probable cause may not be established by the testimony of only the arresting officer that he or she was told by another officer that the information was reliable. *Hughes*, 353 N.C. 200, 204, 539 S.E.2d 625, 628 (2000).

In the *Hughes* case, the first officer claimed to have received a tip from a CRI which he passed on to a detective, who passed the information on to the arresting officer. The first officer did not testify at the suppression hearing or give any other information to the detective about the informant. The tip was that the suspect would arrive on the 5:30 p.m. bus coming from New York City. The tip gave a personal description of the suspect and said that he would have marijuana and

cocaine in his possession, and that he "sometimes" took a taxi from the bus station and "sometimes" carried an overnight bag, and that he would be headed to North Topsail Beach. The arresting officer and his partner waited at the bus station, and observed a man fitting the suspect's description step from behind a bus carrying an overnight bag and get into a taxi. The taxi traveled south on a highway that would eventually split into two directions, one of which was toward Topsail Beach. The officers apprehended the suspect in the taxi, and a subsequent search revealed cocaine and marijuana in the suspect's shoes. The trial court in *Hughes* granted the defendant's motion to suppress the evidence, and this Court reversed. Our Supreme Court reversed the Court of Appeals, and upheld the trial court's order allowing the motion to suppress, stating as follows:

> In applying the test used in *Gates,* this Court also found the prin-
> ciples underlying *Aguilar* and *Spinelli,* mainly that evidence is
> needed to show indicia of reliability, to be important components
> in determining the totality of the circumstances.
>
> Turning to the case before us, the evidence shows that [the detec-
> tive] had never spoken with the informant and knew nothing
> about the informant other than [the first officer's] claim that he
> was a confidential and reliable informant. There was no indica-
> tion that the informant had been previously used and had given
> accurate information or that his statement was against his penal
> interest nor, as will be discussed later, was there any other indi-
> cation of reliability. Some objective proof as to why this inform-
> ant was reliable and credible, other than just [the first officer's]
> assertion passed to [the detective], and by him to [the arresting
> officers], must support [the arresting officers'] decision to con-
> duct a search. To hold otherwise would be to ignore the protec-
> tions contained in the Fourth Amendment.

*Hughes,* 353 N.C. 200, 204, 539 S.E.2d 625, 628-29 (2000).

The present case is distinguished from *Hughes* in at least one sig-
nificant aspect. The "first officer" in the present case, who received
the tip from the informant, testified at the suppression hearing that
this informant had given him information several times over the pre-
vious two years, that the information given had been correct every
time and never been false or unreliable and had led to several arrests.

This distinction is brought out in federal case law, notably *United States v. Hensley,* 469 U.S. 221, 83 L. Ed. 2d 604 (1985). In *Hensley,*

the U.S. Supreme Court reversed the Court of Appeals for the Sixth Circuit, holding that police officers who had relied on a "wanted flyer" issued from another law enforcement department based on information from an informant, were justified to stop the defendant while attempting to obtain further information. While the appellant argues that the *Hughes* case requires the arresting officer to have sufficient probable cause to stop and search a suspect where the probable cause relied on by the first officer is never established, the case before us is different in that the original officer's probable cause was established. In *Hensley*, the Court addressed the extent to which police officers may rely on one another for grounds to stop and search suspects. The *Hensley* Court discussed *Whiteley v. Warden*, 401 U.S. 560 (1971) in its analysis. The officers in *Whiteley* relied on a radio bulletin to justify a stop and search of the suspect. The *Hensley* Court noted, quoting *Whiteley*:

> "We do not, of course, question that the Laramie police were entitled to act on the strength of the radio bulletin. **Certainly police officers called upon to aid other officers in executing arrest warrants are entitled to assume that the officers requesting aid offered the magistrate the information requisite to support an independent judicial assessment of probable cause.** Where, however, the contrary turns out to be true, an otherwise illegal arrest cannot be insulated from challenge by the decision of the instigating officer to rely on fellow officers to make the arrest." [*Whiteley*], at 568. . . .

This language in *Whiteley* suggests that, had the sheriff who issued the radio bulletin possessed probable cause for arrest, then the Laramie police could have properly arrested the defendant even though they were unaware of the specific facts that established probable cause. See *United States v. Maryland*, 479 F2d 566, 569 (CA5 1973). Thus *Whiteley* supports the proposition that, when evidence is uncovered during a search incident to an arrest in reliance merely on a flyer or bulletin, **its admissibility turns on whether the officers who issued the flyer possessed probable cause to make the arrest**. It does not turn on whether those relying on the flyer were themselves aware of the specific facts which led their colleagues to seek their assistance. In an era when criminal suspects are increasingly mobile and increasingly likely to flee across jurisdictional boundaries, this rule is a matter of common sense: it minimizes the volume of information concerning suspects that must be transmitted to

other jurisdictions and enables police in one jurisdiction to act promptly in reliance on information from another jurisdiction.

*United States v. Hensley,* 469 U.S. 221, 230-31, 83 L. Ed. 2d 604, 613-14 (1985) (emphasis added).

Although the present case involves direct officer-to-officer communication instead of a printed flyer, it is analogous to the *Hensley* facts where the probable cause of the first officer was established, in both cases through the testimony before the trial court of the officer who received information from the informant. That testimony was lacking in the *Hughes* case, and both *Hensley* and *Hughes* stand for the proposition that when the first officer's probable cause is not established, the arresting officer's reliance on his fellow officer cannot insulate the otherwise illegal search. However, when the first officer does have probable cause, that reliance is justified and often necessary in the execution of a police officer's duty. *See also State v. Zuniga,* 312 N.C. 251, 260, 322 S.E.2d 140, 145 (1984) ("it is well established that one law enforcement officer may rely upon bulletins from other officers as the basis for an arrest, but only so long as the originating officer himself had probable cause."); *State v. Battle,* 109 N.C. App. 367, 427 S.E.2d 156 (1993) (reasonable suspicion was established from the collective knowledge of the first officer and the arresting officer); *State v. Tilley,* 44 N.C. App. 313, 317, 260 S.E.2d 794, 797 (1979) (". . . probable cause for an arrest can be imputed from one officer to others acting at his request. The officers receiving the request are entitled to assume that the officer requesting aid had probable cause to believe that a crime had been committed. If the transmitting officer did not have probable cause, the arrest would be illegal.").

Once the officer corroborated the description of the defendant and his presence at the named location, he had reasonable grounds to believe a felony was being committed in his presence which in turn created probable cause to stop and search defendant. *See State v. Wooten,* 34 N.C. App. 85, 88, 237 S.E.2d 301, 304 (1977).

In the case at bar, the learned trial judge, who observed the witnesses at the suppression hearing, made findings that Deputy Stevens received information from a confidential, reliable informant whom Deputy Stevens knew personally for two years and whose information had proven reliable in the past and led to numerous arrests. The trial judge found that the informant told Deputy Stevens that an individual named "Corn" was purchasing or had purchased controlled

substances from a person by the name of Feanel at the Hardee's restaurant in Belulaville and that "Corn" was en route to the Brynn Marr Village area of Jacksonville driving a burgundy colored sport utility vehicle, and in possession of the controlled substances. The trial judge found that Deputy Stevens, based on previous information given by the informant, believed "Corn" to be the defendant, Cornelius Nixon, and relayed the information to Detective Bryan of the Jacksonville Police Department, who relayed the information to Sergeant Howard. Sergeant Howard, the trial judge found, knew that the defendant went by the name "Corn" and remembered his address from a prior investigation, and proceeded to Brynn Marr Village to intercept defendant's vehicle. The trial judge found that the defendant's vehicle matched the description given and arrived at a time that would be consistent with normal travel time from Beulaville to the defendant's home. The trial judge found that the officer did have probable cause to stop and search the defendant's vehicle for controlled substances.

After examining the transcript and the record, we agree with the trial court that based on the testimony of the officers, the arresting officer had probable cause because the first officer's probable cause was established, and the evidence was therefore legally obtained.

No error.

Judges HUNTER and BRYANT concur.