IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA17-1377

 Filed: 4 September 2018

Forsyth County, No. 15 CRS 52293-96

STATE OF NORTH CAROLINA

 v.

DEMARKO DONIVAN DEGRAPHENREED

 Appeal by defendant from judgment entered 21 March 2017 by Judge Susan

E. Bray in Forsyth County Superior Court. Heard in the Court of Appeals 9 August

2018.

 Attorney General Joshua H. Stein, by Special Deputy Attorney General John A.
 Payne, for the State.

 Allegra Collins for defendant-appellant.

 TYSON, Judge.

 Demarko Donivan Degraphenreed (“Defendant”) appeals the trial court’s

denial of his motion to suppress evidence seized from a search of a vehicle. We affirm.

 I. Background

 Between January and March 2015, Winston-Salem police officers conducted a

drug investigation of Defendant, including surveillance of Defendant’s residence

located at 301 South Spring Street Unit-A, which is situated at the end of a dead-end

street. During January 2015, a confidential police informant arranged over the
 STATE V. DEGRAPHENREED

 Opinion of the Court

telephone to meet with Defendant for the purpose of purchasing heroin. The

confidential informant and Defendant purportedly agreed to meet at Defendant’s

residence. Law enforcement officers provided the confidential informant with an

unspecified amount of money to conduct a controlled purchase and observed the

confidential informant enter Defendant’s residence. Afterwards, the confidential

informant surrendered a quantity of heroin to the law enforcement officers, which the

informant indicated he had purchased from Defendant.

 A couple of months later, in March 2015, the same confidential informant

conducted another controlled purchase of heroin at Defendant’s residence on behalf

of law enforcement. The informant obtained a quantity of heroin, which he advised

the law enforcement officers he had purchased from Defendant. During the course of

the three month surveillance of Defendant’s residence, law enforcement officers

observed the confidential informant purchase narcotics from Defendant at the trunk

of a vehicle parked on the other side of the road from Defendant’s residence. The

vehicle was a black 1985 Mercury Grand Marquis (the “Grand Marquis”). Law

enforcement officers had observed the vehicle being regularly parked across from

Defendant’s residence during the course of the three-month investigation.

 Based upon the information obtained from the confidential informant,

Winston-Salem Police Investigator Ashley Kimel applied for and was issued a search

warrant for Defendant’s residence at 301 South Spring Street Unit-A on 13 March

 -2-
 STATE V. DEGRAPHENREED

 Opinion of the Court

2015. Neither Officer Kimel’s search warrant application nor the search warrant

referenced the Grand Marquis vehicle.

 Later on 13 March 2015, Officer Kimel, Officer Patrick McKaughan, and other

law enforcement officers executed the search warrant for Defendant’s residence.

Upon arriving at Defendant’s residence, Officer Kimel observed the Grand Marquis

parked “adjacent from the residence, across the street.” Officer Kimel observed that

two of the tires of the Grand Marquis were partially on the road way and the vehicle

was parked parallel to Defendant’s residence. There was no other residence on the

side of the street the Grand Marquis was parked upon, but a parking lot and a

commercial building is located there. Surrounding Defendant’s residence was a

seven-to-eight-foot-high chain link fence around the sides and back of Defendant’s

yard and a short wooden fence in the front of the residence.

 When the officers executed the search warrant, Officer McKaughan entered

Defendant’s residence while Officer Kimel crossed the street and approached the

Grand Marquis. Officer Kimel requested Officer McKaughan bring his police K-9,

named Sassy, outside to sniff the Grand Marquis. Officer McKaughan had Sassy

sniff the outside of the Grand Marquis, and the K-9 gave a positive alert for narcotics.

Officer Kimel then went inside Defendant’s residence to obtain the keys to the Grand

Marquis. Another officer inside the residence, Detective Luper, informed Officer

Kimel that Defendant had requested a key ring be placed inside his pocket. Officer

 -3-
 STATE V. DEGRAPHENREED

 Opinion of the Court

Kimel retrieved the key ring from Defendant’s pocket and found one of the keys

located on the key ring unlocked the Grand Marquis.

 Upon searching the Grand Marquis, the officers discovered inside the trunk a

backpack containing Defendant’s wallet, which contained Defendant’s social security

card and bank cards. Inside the backpack, officers also found a Smith & Wesson .38

caliber revolver, a Raven Arms .25 caliber handgun, a Taurus Millennium PT111 Pro

9mm handgun, two orange prescription pill bottles, one of which contained a plastic

bag containing a substance that tested positive for heroin.

 The backpack also contained a box of Browning .25 caliber auto ammunition,

a digital scale, and a plastic bag containing MDMA and 30 tablets of oxycodone. After

searching the VIN number of the Grand Marquis, Officer Kimel discovered the

vehicle was registered to Defendant’s girlfriend. The officers then arrested

Defendant.

 On 6 July 2015, Defendant was indicted for trafficking opium or heroin by

possession, possession with intent to sell and deliver heroin, possession with intent

to sell and deliver oxycodone, possession of a firearm by a felon, possession of

marijuana, and possession of drug paraphernalia. On 27 January 2016, Defendant

filed a motion to suppress the evidence seized from the search of the Grand Marquis.

In his motion to suppress, Defendant asserted the evidence obtained from the Grand

Marquis should be suppressed because no probable cause existed to search the vehicle

 -4-
 STATE V. DEGRAPHENREED

 Opinion of the Court

and the search warrant for Defendant’s residence did not refer to a vehicle. Following

a hearing on Defendant’s motion to suppress, the trial court orally denied Defendant’s

motion on 21 March 2016.

 The trial court filed a written order (the “Order”) denying Defendant’s motion

to suppress on 23 March 2017. Based upon its findings of fact, the trial court

concluded “there was probable cause to search the trunk of the 1985 Grand Marquis.”

 On 21 March 2017, Defendant pled guilty to all charges, while expressly

reserving the right to appeal the denial of his motion to suppress. Defendant was

sentenced for trafficking opium or heroin by possession from 70 to 93 months

imprisonment and ordered to pay a $50,000 fine. On the charges for possession with

intent to sell and deliver heroin, possession with intent to sell and deliver oxycodone,

possession of a firearm by a felon, possession of marijuana, and possession of drug

paraphernalia, Defendant was sentenced to 10 to 21 months imprisonment, to run

concurrently with his sentence for trafficking opium or heroin by possession.

Defendant filed timely notice of appeal.

 II. Jurisdiction

 Jurisdiction lies with this Court pursuant to N.C Gen. Stat. §§ 15A-1444(e)

(2017) and 15A-979(b) (2017).

 III. Issues

 -5-
 STATE V. DEGRAPHENREED

 Opinion of the Court

 Defendant asserts the trial court erred by denying his motion to suppress. He

argues the police officers searched the Grand Marquis vehicle without a search

warrant and without probable cause, in violation of the Fourth Amendment of the

United States Constitution, as applied to the states through the Fourteenth

Amendment. U.S. Const. amend. XIV, § 1; State v. Sanders, 327 N.C. 319, 331, 395

S.E.2d 412, 420 (1990), cert. denied, 498 U.S. 1051, 112 L. Ed. 2d 782 (1991) (“The

fourth amendment as applied to the states through the fourteenth amendment

protects citizens from unlawful searches and seizures committed by the government

or its agents.” (citation omitted)).

 Defendant argues, “the trial court’s finding that the car was parked within the

curtilage of Defendant’s residence was unsupported by the evidence, and erroneous

as a matter of law” and “the findings of fact which were supported by competent

evidence did not support its conclusion of law that probable cause supported the

search of the vehicle.” Defendant also asserts, for the first time on appeal, the State

failed to produce sufficient evidence of the K-9’s reliability.

 IV. Standard of Review

 The scope of this Court’s review of a trial court’s order denying a motion to

suppress is “strictly limited to determining whether the trial judge’s underlying

findings of fact are supported by competent evidence, in which event they are

conclusively binding on appeal, and whether those factual findings in turn support

 -6-
 STATE V. DEGRAPHENREED

 Opinion of the Court

the judge’s ultimate conclusions of law.” State v. Bone, 354 N.C. 1, 7, 550 S.E.2d 482,

486 (2001) (quoting State v. Cooke, 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982)),

cert. denied, 535 U.S. 940, 152 L.Ed.2d 231 (2002). The trial court’s conclusions of

law are reviewed de novo. State v. McCollum, 334 N.C. 208, 237, 433 S.E.2d 144, 160

(1993) (citation omitted).

 “In reviewing the denial of a motion to suppress, we examine the evidence

introduced at trial in the light most favorable to the State . . . .” State v. Hunter, 208

N.C. App. 506, 509, 703 S.E.2d 776, 779 (2010) (citation omitted).

 V. Analysis

 A. Curtilage

 Regarding curtilage, the trial court concluded, in pertinent part:

 16. The street in front of the residence is narrow and a dead
 end. The vehicle was routinely parked across the street, in
 effect becoming part of the curtilage of the premises, despite
 the house being surrounded by a fence. (Emphasis
 supplied).

 17. Officer Kimel had probable cause to search the trunk
 of the Grand Marquis (curtilage or not) after the dog
 alerted. (Emphasis supplied).

 Although the trial court labeled this determination as a finding of fact, the

issue of whether an area is located within the curtilage of a home is a question of law.

See United States v. Dunn, 480 U.S. 294, 301, 94 L.Ed.2d 326, 334-335 (1987)

(establishing a four-factor legal test to determine the boundaries of a home’s

 -7-
 STATE V. DEGRAPHENREED

 Opinion of the Court

curtilage). The labels “findings of fact” and “conclusions of law” employed by the

lower court in a written order do not determine the nature of our standard of appellate

review. See Peters v. Pennington, 210 N.C. App. 1, 15, 707 S.E.2d 724, 735 (2011)

(reviewing what was labeled as a “conclusion of law” as a finding of fact). If the lower

tribunal labels as a finding of fact what is in substance a conclusion of law, we review

that “finding” as a conclusion de novo. Id.

 “The United States Supreme Court has . . . defined the curtilage of a private

house as ‘a place where the occupants have a reasonable and legitimate expectation

of privacy that society is prepared to accept.’ ” State v. Washington, 134 N.C. App.

479, 483, 518 S.E.2d 14, 16 (1999) (quoting Dow Chemical Co. v. United States, 476

U.S. 227, 235, 90 L.Ed.2d 226, 235 (1986)).

 “As a general rule, ‘if a search warrant validly describes the premises to be

searched, a car [also located] on the premises may be searched even though the

warrant contains no description of the car.’ ” State v. Courtright, 60 N.C. App. 247,

249, 298 S.E.2d 740, 742, appeal dismissed and review denied, 308 N.C. 192, 302

S.E.2d 245 (1983) (quoting State v. Reid, 286 N.C. 323, 326, 210 S.E.2d 422, 424

(1974)). “The premises of a dwelling house include, for search and seizure purposes,

the area within the curtilage . . . .” Id. at 249, 298 S.E.2d at 742.

 The State conceded at oral argument before this Court that the Grand Marquis

was not located within the curtilage of Defendant’s residence. Nothing indicates

 -8-
 STATE V. DEGRAPHENREED

 Opinion of the Court

Defendant had a reasonable expectation of privacy in the side of a public street

opposite to his residence and outside of the confines of the fence surrounding the

residence. The trial court’s conclusion of law, incorrectly labeled as a finding of fact,

is erroneous as a matter of law that the Grand Marquis was “in effect” within the

curtilage of Defendant’s residence when it was parked upon a public street.

 Although the Grand Marquis was located and parked outside of the curtilage

of the residence, this conclusion does not automatically warrant a reversal of the trial

court’s order. The remainder of the trial court’s unchallenged findings of fact support

its conclusion the police had probable cause to conduct the search of the Grand

Marquis based upon: (1) the information relayed to police by the confidential

informant; (2) police observation of the confidential informant and Defendant at the

Grand Marquis; (3) Defendant having the keys to the Grand Marquis on his person

when the search warrant was executed; (4) the K-9 sniff; and, (5) the motor vehicle

exception to the Fourth Amendment.

 B. Warrantless Searches

 Here, the search warrant did not mention the Grand Marquis. “A warrantless

search is lawful if probable cause exists to search and the exigencies of the situation

make search without a warrant necessary.” State v. Mills, 104 N.C. App. 724, 730,

411 S.E.2d 193, 196 (1991) (citing State v. Allison, 298 N.C. 135, 141, 257 S.E.2d 417,

421 (1979)).

 -9-
 STATE V. DEGRAPHENREED

 Opinion of the Court

 “Probable cause exists where the facts and circumstances within their [the

officers’] knowledge and of which they had reasonable trustworthy information [are]

sufficient in themselves to warrant a man of reasonable caution in the belief that an

offense has been or is being committed.” State v. Downing, 169 N.C. App. 790, 795,

613 S.E.2d 35, 39 (2005) (quotation and internal quotation marks omitted). “The

existence of probable cause is a ‘commonsense, practical question’ that should be

answered using a ‘totality-of-the-circumstances approach.’” State v. McKinney, 361

N.C. 53, 62, 637 S.E.2d 868, 874 (2006) (citing Illinois v. Gates, 462 U.S. 213, 230-31,

76 L. Ed. 2d 527, 543-44 (1983); State v. Arrington, 311 N.C. 633, 637, 319 S.E.2d 254,

257 (1984)).

 “The Fourth Amendment proscribes all unreasonable searches and seizures,

and it is a cardinal principle that searches conducted outside the judicial process,

without prior approval by judge or magistrate, are per se unreasonable under the

Fourth Amendment—subject only to a few specifically established and well-

delineated exceptions.” United States v. Ross, 456 U.S. 798, 825, 72 L. Ed. 2d 572, 594

(1982) (quotation marks and citation omitted).

 An exception to the warrant requirement is the motor vehicle exception. See

id.; State v. Isleib, 319 N.C. 634, 638-39, 356 S.E.2d 573, 576-77 (1987) (detailing the

automobile exception to the Fourth Amendment’s warrant requirement).

 - 10 -
 STATE V. DEGRAPHENREED

 Opinion of the Court

 “A warrant is not required to perform a lawful search of a vehicle on a public

road when there is probable cause for the search.” State v. Baublitz, 172 N.C. App.

801, 808, 616 S.E.2d 615, 620 (2005) (citation omitted). Under the motor vehicle

exception, “A police officer in the exercise of his duties may search an automobile

without a search warrant when the existing facts and circumstances are sufficient to

support a reasonable belief that the automobile carries contraband materials.” State

v. Holmes, 109 N.C. App. 615, 621, 428 S.E.2d 277, 280 (quotation marks, citation,

and ellipses omitted), disc. rev. denied, 334 N.C. 166, 432 S.E.2d 367 (1993). “If

probable cause justifies the search of a lawfully stopped vehicle, it justifies the search

of every part of the vehicle and its contents that may conceal the object of the search.”

Ross, 456 U.S. at 825, 72 L. Ed. 2d at 594.

 Concerning a confidential informant, this Court has previously held:

 Information from a [confidential reliable informant] can
 form the probable cause to justify a search. State v. Holmes,
 142 N.C. App. 614, 544 S.E.2d 18, cert. denied, 353 N.C.
 731, 551 S.E.2d 116 (2001). “In utilizing an informant’s tip,
 probable cause is determined using a ‘totality-of-the
 circumstances’ analysis which ‘permits a balanced
 assessment of the relative weights of all the various indicia
 of reliability (and unreliability) attending an informant’s
 tip.’ ” Holmes, 142 N.C. App. 614, 621, 544 S.E.2d 18, 22
 (2001) (quoting State v. Earhart, 134 N.C. App. 130, 133,
 516 S.E.2d 883, 886 (1999)).

State v. Nixon, 160 N.C. App. 31, 37, 584 S.E.2d 820, 824 (2003).

 - 11 -
 STATE V. DEGRAPHENREED

 Opinion of the Court

 The trial court’s order contains several findings of fact, which are based upon

competent evidence in the record to which Defendant does not assign error, including:

 2. A confidential and reliable informant (CI) had advised
 the police that a black male known as “Red” (later
 determined to be Defendant Demarko Degraphenreed) was
 selling and distributing heroin from 301 S. Spring Street.

 3. The CI made monitored, controlled buys of heroin at that
 residence from Defendant Degraphenreed prior to issuance
 of the search warrant (January-March, 2015).

 ...

 5. During each surveillance, the [Grand Marquis] was
 backed [into] its parked location, so officers could not view
 the license plate and ascertain registration/ownership.

 6. The CI told officers that Defendant Degraphenreed
 utilized the vehicle.

 7. During one of the CI’s purchases, officers observed
 Defendant Degraphenreed at the trunk of the [Grand
 Marquis].

 ...

 12. The keys to the vehicle were on a key ring that was in
 a bedroom door. Defendant Degraphenreed asked officers
 in the house to put “his” keys in his pocket. Officer Kimel
 retrieved the keys to the vehicle from Defendant’s pocket.

 Defendant does not assign error to these findings. These unchallenged

findings are binding upon appeal. State v. Biber, 365 N.C. 162, 168, 712 S.E.2d 874,

878 (2011) (“[W]hen . . . the trial court’s findings of fact are not challenged on appeal,

they are deemed to be supported by competent evidence and are binding on appeal.”

 - 12 -
 STATE V. DEGRAPHENREED

 Opinion of the Court

(citation omitted)).

 In addition, the search warrant for Defendant’s residence also expressly

authorized the search of Defendant’s person. At the hearing on Defendant’s motion

to suppress, Officer Kimel testified:

 [Officer Kimel]: Detective Luper was standing by with Mr.
 Degraphenreed in Bedroom NO. 2, which was the child’s
 bedroom and requested the keys from Mr. Degraphenreed,
 which initially he advised the car did not belong to him.
 Detective Luper informed me that there were keys that
 were initially located in the doorknob to this bedroom, and
 that Mr. Degraphenreed had requested to have his keys,
 referring to these keys that were in that door be placed in
 his pocket. Detective Luper advised that he placed the
 keys in his pocket. And that is where I retrieved the keys
 from Mr. Degraphenreed and found that one of the keys
 that were on the key-ring belonged to that vehicle.

 Defendant did not object to this testimony at the hearing and Defendant does

not challenge the trial court’s finding of fact 12, which summarizes this testimony.

 C. K-9’s Reliability

 Beyond the trial court’s “finding” that the Grand Marquis was within the

curtilage, Defendant argues on appeal the reliability of the K-9 was not sufficiently

established by the State to support the trial court’s conclusion the officers had

probable cause to search the Grand Marquis, pursuant to Florida v. Harris, 568 U.S.

237, 240, 185 L. Ed. 2d 61 (2013). However, Defendant is raising the issue of the K-

9’s reliability for the first time on appeal.

 In Defendant’s written motion to suppress, the affidavit in support of his

 - 13 -
 STATE V. DEGRAPHENREED

 Opinion of the Court

motion to suppress, and at the hearing on Defendant’s motion to suppress, Defendant

only asserted and argued the search warrant not mentioning the Grand Marquis and

the Grand Marquis being outside the curtilage of his residence as the reasons the

officers did not have probable cause to search the Grand Marquis. At the hearing on

the motion to suppress, the trial court and Defendant’s trial counsel had the following

exchange:

 THE COURT: I'll hear from you in just a minute,
 [Prosecutor].

 But [Defense Counsel], I wanted to give you an
 opportunity, if you wanted to comment. You know, I read
 the State v. Lowe during the break. I also read and was
 rereading Florida v. Harris, which is [a] United States
 Supreme court 9-0 opinion in 2013, that basically
 established that evidence of a dog’s satisfactory
 performance in certification or training is sufficient reason
 to trust his alert. And then his alert is enough for probable
 cause.

 So it really seems, that an argument can be made that
 despite the curtilage of the house, or what the search
 warrant covered, once the dog went out and sniffed the
 vehicle and alerted, then they had probable cause to search
 the vehicle. But particularly, coupled with the knowledge
 that the vehicle had been present, that the CI had told them
 the Defendant had been by the trunk of the car. But the
 alert of the dog kind of gave them probable cause to go in,
 it seems to me. But I don’t know if you’ve read that case
 recently. (Emphasis supplied).

 [Defense Counsel]: I'm not familiar with that case Judge
 but --

 THE COURT: It’s 568 U.S. I’m not sure of the number, but

 - 14 -
 STATE V. DEGRAPHENREED

 Opinion of the Court

 it was decided February 19th 2013.

 [Defense Counsel]: But Judge, even from the dog sniff, if in
 fact that only further strengthened their probable cause at
 that point in time for a vehicle where they know that it is
 not his. They’re bound to go get a search warrant in that
 situation to see if even more reason for them to go get a
 search warrant of that vehicle, compounded with the other
 factors in the case. They decided not to do that. And no
 exception applies, Judge, under this fact scenario. I agree,
 dog sniff does allow for probable cause. (Emphasis
 supplied).

 Our appellate courts have repeatedly held a party may not assert a different

theory on appeal, which was not raised before the trial court. State v. Sharpe, 344

N.C. 190, 194, 473 S.E.2d 3, 5 (1996) (“This Court has long held that where a theory

argued on appeal was not raised before the trial court, ‘the law does not permit parties

to swap horses between courts in order to get a better mount in the Supreme Court.’”)

(citing Weil v. Herring, 207 N.C. 6, 10, 175 S.E. 836, 838 (1934)); see also State v.

Benson, 323 N.C. 318, 321-22, 372 S.E.2d 517, 518-19 (1988) (holding defendant

waived argument where defendant relied on one theory before trial as basis for

written motion to suppress and then asserted another theory on appeal).

 Defendant did not assert the K-9’s purported lack of reliability as a basis for

his motion to suppress before the trial court, and his trial counsel conceded a dog’s

sniff provides a basis for probable cause. Defendant’s argument against the K-9’s

reliability is being raised for the first time on appeal and is waived. See Sharpe, 344

N.C. at 194, 473 S.E.2d at 5.

 - 15 -
 STATE V. DEGRAPHENREED

 Opinion of the Court

 With regards to the K-9’s open-air sniff, the trial court made the following

relevant finding of fact:

 11. Sassy performed a free air sniff of the Grand Marquis,
 gave a positive alert for narcotics and a further alert at the
 trunk of the vehicle.

 Defendant does not contest the K-9 never alerted to the scent of narcotics or

otherwise assign error to finding of fact 11. This Court has previously acknowledged

that an open-air dog sniff does not constitute a search under the Fourth Amendment:

 The United States Supreme Court discussed the Fourth
 Amendment implications of a canine sniff in United States
 v. Place, 462 U.S. 696, 77 L. Ed. 2d 110 (1983). There, the
 Court treated the sniff of a well-trained narcotics dog as sui
 generis because the sniff disclose[d] only the presence or
 absence of narcotics, a contraband item. Id. at 707, 77 L.
 Ed. 2d at 121. As the United States Supreme Court
 explained in Illinois v. Caballes, since there is no
 legitimate interest in possessing contraband, a police
 officer’s use of a well-trained narcotics dog that reveals
 only the possession of narcotics does not compromise any
 legitimate privacy interest and does not violate the Fourth
 Amendment. 543 U.S. 405, 408-09, 160 L. Ed. 2d 842, 847
 (2005).

State v. Washburn, 201 N.C. App. 93, 97, 685 S.E.2d 555, 558 (2009) (internal

quotation marks omitted and alteration in original). The open-air sniff by the K-9,

Sassy, at Officer McKaughan’s direction did not constitute a “search” under the

Fourth Amendment. See id.

 The K-9’s positive alert for narcotics at the Grand Marquis provided Officer

Kimel with additional factors to find probable cause to conduct a warrantless search

 - 16 -
 STATE V. DEGRAPHENREED

 Opinion of the Court

of the inside of the vehicle. “[A] positive alert for drugs by a specially trained drug

dog gives probable cause to search the area or item where the dog alerts.” Id. at 100,

685 S.E.2d at 560. The K-9’s positive alert for narcotics within the Grand Marquis

was “sufficient to support a reasonable belief that the automobile carrie[d]

contraband materials.” Holmes, 109 N.C. App. at 621, 428 S.E.2d at 280.

 D. Probable Cause

 Based upon the totality of the circumstances, Officer Kimel had probable cause

to search the trunk of the Grand Marquis. The trial court’s findings of fact reflecting:

(1) the controlled purchases by the confidential reliable informant, during which

times the Grand Marquis was always present; (2) the officers’ observation of a drug

transaction taking place at the trunk of the Grand Marquis; (3) the Grand Marquis

parked on a public street near Defendant’s residence during the officers’

investigation; (4) the Defendant’s possession of the keys to the Grand Marquis; and

(5) the K-9’s positive alerts outside of the vehicle for the potential presence of

narcotics, provide a reasonable, common-sense basis to support probable cause for the

officers to believe narcotics were present inside the Grand Marquis. See Nixon, 160

N.C. App. at 37, 584 S.E.2d at 824 (“Information from a [confidential reliable

informant] can form the probable cause to justify a search.” (citation omitted));

Washburn, 201 N.C. App. at 100, 685 S.E.2d at 560 (“a positive alert for drugs by a

specially trained drug dog gives probable cause to search the area or item where the

 - 17 -
 STATE V. DEGRAPHENREED

 Opinion of the Court

dog alerts”).

 Based upon the automobile being located on a public road exception to the

Fourth Amendment warrant requirement, probable cause justified the officers in

conducting the warrantless search of the Grand Marquis. See Baublitz, 172 N.C. App.

at 808, 616 S.E.2d at 620 (“A warrant is not required to perform a lawful search of a

vehicle on a public road when there is probable cause for the search.” (citation

omitted)).

 Arguably, the officers had probable cause to search the Grand Marquis even

without the K-9 sniff, based upon the controlled purchases by the confidential

informant, the officers’ observation of Defendant and the confidential informant at

the trunk of the Grand Marquis during a controlled purchase. Nixon, 160 N.C. App.

at 37, 584 S.E.2d at 824. The K-9’s positive alerts for narcotics further supports the

conclusion the officers had probable cause to search the Grand Marquis.

 The trial court’s unchallenged findings of fact support the trial court’s

conclusion Officer Kimel had probable cause to conduct a warrantless search of the

trunk of the Grand Marquis. Defendant’s arguments are overruled.

 VI. Conclusion

 The trial court misapprehended the law in concluding the Grand Marquis was

parked within the curtilage of Defendant’s residence. Defendant has waived the issue

of the K-9’s reliability by not raising the issue before the trial court. The trial court’s

 - 18 -
 STATE V. DEGRAPHENREED

 Opinion of the Court

remaining findings of fact support the trial court’s conclusion Officer Kimel had

probable cause to search the Grand Marquis, under the totality of the circumstances.

The trial court’s order denying Defendant’s motion to suppress is affirmed. It is so

ordered.

 AFFIRMED.

 Judges DIETZ and BERGER concur.

 - 19 -